ROCKY BURRIS EUDY, PLAINTIFF-EMPLOYEE v. MICHELIN NORTH AMERICA, INC., DEFENDANT-EMPLOYER, AND ACE USA INSURANCE COMPANY, DEFENDANT-CARRIER

No. COA06-902

(Filed 17 April 2007)

**1. Workers' Compensation— compensable change in condition—evidence and findings sufficient**

The Industrial Commission did not err in a workers' compensation case by determining that plaintiff had suffered a compensable change in condition. Plaintiff showed a change in his physical capacity that impacted his degree of disability and his earning capacity.

**2. Workers' Compensation— ability to return to work— employer not able to provide work within restriction**

The Industrial Commission did not err in a workers' compensation case by concluding that defendant could no longer provide plaintiff with work upon receipt of plaintiff's new restrictions, impacting his earning capacity. There was no evidence that plaintiff could have returned to a light duty job with defendant that he was physically able to perform, and there is evidence that plaintiff diligently sought work following the termination of his em-

**EUDY v. MICHELIN N. AM., INC.**

[182 N.C. App. 646 (2007)]

ployment. Further, plaintiff was not physically able to work in his former regular duty job.

**3. Workers' Compensation— constructive refusal of new employment—termination from subsequent job—failure to obtain GED**

The Industrial Commission did not err by concluding that plaintiff was not completely barred from receiving workers' compensation benefits where defendants argued constructive refusal of employment based on a subsequent firing and on plaintiff's failure to obtain retraining. The Commission barred benefits for the period following termination of plaintiff's subsequent employment, and defendants neither cited authority for the proposition that failure to obtain a GED constitutes misconduct nor introduced evidence that plaintiff is capable of obtaining a GED or that jobs would then be available at higher wages.

**4. Workers' Compensation— modification of compensation— not an award under multiple sections of the Act**

An Industrial Commission opinion did not award benefits under multiple sections of the Workers' Compensation Act. Plaintiff showed a change of condition allowing the Full Commission to modify his award and grant him benefits under N.C.G.S. § 97-30, and defendants were given a credit for the benefits previously paid under N.C.G.S. § 97-31.

Appeal by defendants from an Opinion and Award entered 2 March 2006 by the Full Commission. Heard in the Court of Appeals 7 March 2007.

*Bollinger & Piemonte, PC, by Bobby L. Bollinger, Jr., for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Paul Lawrence and Taurus Becton, for defendant-appellants.*

BRYANT, Judge.

Michelin North America, Inc. and ACE USA Insurance Company (defendants) appeal from an Opinion and Award of the North Carolina Industrial Commission entered 2 March 2006, awarding Rocky Burris Eudy (plaintiff) workers' compensation benefits under N.C. Gen. Stat. § 97-30. For the reasons below we affirm the Order and Award of the Full Commission.

EUDY v. MICHELIN N. AM., INC.

[182 N.C. App. 646 (2007)]

## Facts

On the date of the hearing in this matter, plaintiff was fifty-five years old and had completed the seventh grade. In 1990 plaintiff became employed with defendant-Michelin as a tire-builder. Plaintiff suffered a compensable occupational disease while working for defendant-Michelin on 10 June 2000, when he developed bilateral carpal tunnel syndrome. Defendants admitted the claim was compensable and paid weekly benefits based upon an average weekly wage of $712.00, which yielded a compensation rate of $474.76 per week.

Plaintiff was subsequently diagnosed with bilateral severe carpal tunnel syndrome on 8 September 2000. On 26 September 2000, plaintiff underwent carpal tunnel release surgery to relieve the condition in his right hand. Plaintiff underwent the same surgical procedure on his left hand on 24 October 2000. Following the surgeries, plaintiff was assigned a five percent permanent partial impairment rating to his right hand and a five percent permanent partial impairment rating to his left hand on 18 January 2001. Plaintiff was released for regular work duty and given permanent restrictions of no forceful gripping or pinching activities, or use of vibratory or impact tools, and weight restrictions for each hand of twenty to twenty-five pounds. Plaintiff was assigned to a new position as a tire painter, which required plaintiff to lift tires weighing up to fifty pounds.

Both parties agreed that defendants would pay plaintiff twenty weeks of workers' compensation benefits for the five percent permanent partial disability to each hand, pursuant to a Form 21 agreement. The Form 21 agreement was approved by the Commission on 13 July 2001.

On 21 May 2001, plaintiff returned to his treating physician, Dr. Warren Burrows, who stated plaintiff appeared to have mild recurrence of his symptoms and placed him on light duty. Plaintiff was assigned restrictions not to lift/carry, push/pull more than ten to fifteen pounds. On 27 August 2001, Dr. Burrows recommended plaintiff be placed at a twenty pound lifting restriction and plaintiff returned to light duty work. On 17 September 2001, plaintiff followed up with Dr. Burrows who noted plaintiff's symptoms and numbness in his hands had improved.

On 27 September 2001, plaintiff underwent a Functional Capacity Evaluation (FCE) that demonstrated he was able to lift occasionally

twenty-one to fifty pounds, frequently eleven to twenty pounds, and constantly one to ten pounds. The FCE also indicated plaintiff was able to carry occasionally fifty-one to one hundred pounds, frequently twenty-six to fifty pounds, and constantly eleven to twenty pounds. On 1 October 2001, Dr. Burrows gave plaintiff permanent restrictions in compliance with the FCE, and noted plaintiff "has already received an impairment rating and needs no additional rating." Plaintiff has not complained about his hand condition or sought any additional medical treatment since 1 October 2001.

On 9 November 2001, plaintiff was laid off by defendant, and took a voluntary resignation package which was unrelated to any compensation plaintiff was due under the North Carolina Workers' Compensation Act. On 14 March 2002, defendants assigned plaintiff vocational rehabilitation with Nancy Stewart. Plaintiff subsequently secured employment with Homanit, USA as forklift driver on or about 13 May 2002. However, on 13 March 2003, Homanit terminated plaintiff's employment as a result of excessive unexcused absences and tardiness. Plaintiff then began working for the City of Albemarle on 8 September 2003, as a water tester. Plaintiff was subsequently laid off by the City of Albemarle but may be returning to work if he passes an Algebra test. Neither of plaintiff's jobs since he was laid off by defendant-Michelin have caused pain in his hands, and both paid less than plaintiff earned while working for defendant-Michelin.

*Procedural History*

This matter was heard before Deputy Commissioner J. Brad Donovan in Concord, North Carolina on 16 November 2004. On 6 May 2005, Deputy Commissioner Donovan filed an Opinion and Award in which he concluded that, following plaintiff's return to work with defendant-Michelin in early 2001, he suffered a change in condition which increased his symptoms and which impacted his earning capacity and degree of disability. Defendants appealed to the Full Industrial Commission which heard this matter on 6 December 2005.

On 2 March 2006, the Full Commission issued an Opinion and Award in which it upheld Deputy Commissioner Donovan's conclusion that plaintiff suffered a change in condition which increased his symptoms and impacted his earning capacity and degree of disability. The Full Commission also concluded that upon receipt of plaintiff's new restrictions, defendant-Michelin could no longer provide him with work, which impacted his earning capacity. Defendants appeal.

**EUDY v. MICHELIN N. AM., INC.**

[182 N.C. App. 646 (2007)]

Defendants present the issue of whether the Full Commission erred in determining plaintiff suffered a compensable change of condition pursuant to N.C. Gen. Stat. § 97-47. Defendants specifically argue plaintiff has failed to show a change in condition affecting his physical capacity to earn wages. We disagree.

## Standard of Review

Review by this Court of a decision by the North Carolina Industrial Commission is limited to the determination of "whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Commission's findings of fact are conclusive on appeal even where there is contrary evidence, and such findings may only be set aside where there is a "complete lack of competent evidence to support them." *Johnson v. Herbie's Place*, 157 N.C. App. 168, 171, 579 S.E.2d 110, 113 (2003) (citation and quotations omitted); *see also Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). Our review " 'goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Id.* (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "[E]vidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Id.* (citation omitted); *see also Hollman v. City of Raleigh*, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968) ("[O]ur Workmen's Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees . . ., and its benefits should not be denied by a technical, narrow, and strict construction."). However, "[t]he Commission's conclusions of law are reviewed *de novo*." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

## Change of Condition

[1] N.C. Gen. Stat. § 97-47 provides, in pertinent part, that

[u]pon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Article[.]

EUDY v. MICHELIN N. AM., INC.

[182 N.C. App. 646 (2007)]

N.C. Gen. Stat. § 97-47 (2005). "A validly executed I.C. Form 21 agreement constitutes an 'award' under the North Carolina Workers' Compensation Act." *Apple v. Guilford County*, 84 N.C. App. 679, 681, 353 S.E.2d 641, 642, *rev'd on other grounds*, 321 N.C. 98, 361 S.E.2d 588 (1987).

"[A] change in condition under N.C.G.S. § 97-47 [is] a condition occurring after a final award of compensation that is different from those exist[ing] when the award was made, and results in a substantial change in the physical capacity to earn wages." *Pomeroy v. Tanner Masonry*, 151 N.C. App. 171, 179, 565 S.E.2d 209, 215 (2002) (internal citations and quotations omitted). A change in condition can consist of:

> [1] a change in the claimant's physical condition that impacts his earning capacity, [2] a change in the claimant's earning capacity even though claimant's physical condition remains unchanged, or [3] a change in the degree of disability even though claimant's physical condition remains unchanged.

*Blair v. Am. Television & Commc'ns Corp.*, 124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996) (internal citations omitted). "In all instances, the party seeking modification of an award due to a 'change in condition' has the burden to prove that the new condition is directly related to the original compensable injury that is the basis of the award the party seeks to modify." *Pomeroy*, 151 N.C. App. at 179, 565 S.E.2d at 215. Further, with regard to proving disability in general, this Court has held that,

> [t]he burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). These same factors have been applied in determining whether an employee has met his burden to show a change in condition under N.C. Gen. Stat. § 97-47. *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 534, 491 S.E.2d 678, 681 (1997); *Blair*, 124 N.C. App. at 425, 477 S.E.2d at 191-92.

Here, the Full Commission found as fact, and defendants do not challenge, that:

4. On January 18, 2001, Dr. Burrows released the plaintiff from treatment and imposed permanent restrictions of no lifting over 20-25 pounds with each hand, no forceful pinching or gripping activities, and no use of vibratory or impact tools. Dr. Burrows assigned a five percent (5%) permanent partial impairment rating to each of the plaintiff's hands.

It is this disability from which plaintiff has to show a change in condition impacting his earning capacity in order to support a change in his benefits under N.C. Gen. Stat. § 97-47. The Full Commission further found as fact that:

6. The tire painting job required the plaintiff to lift tires weighing up to 50 pounds, approximately four times each. The plaintiff processed 300 to 400 tires per day. As a result, the plaintiff returned to Dr. Burrows on August 27, 2001, with complaints of numbness in his fingers and pain in his wrists. Dr. Burrows' examination demonstrated "some evidence of median nerve irritation." Dr. Burrows diagnosed the plaintiff with a worsening of his condition, fitted him with new splints, and recommended that his lifting restriction be lowered to 20 pounds.

. . .

8. On October 1, 2001. Dr. Burrows reviewed the results of the FCE and recommended the following lifting restrictions: 21 to 50 pounds occasionally, 11 to 25 pounds frequently, and 1-10 pounds constantly. For carrying, the restrictions were 51 to 100 pounds occasionally, 26 to 50 pounds frequently, and 11 to 20 pounds constantly. Dr. Burrows noted that the plaintiff needed an additional rating to his hands beyond that which had already been imposed. Dr. Burrows forwarded the new restrictions to the defendant-employer.

Except for the finding concerning an additional rating to plaintiff's hands, these findings of fact are supported by competent evidence in

EUDY v. MICHELIN N. AM., INC.

[182 N.C. App. 646 (2007)]

the record before this Court. While the Full Commission erred in finding "Dr. Burrows noted that the plaintiff needed an additional rating to his hands beyond that which had already been imposed," this error does not affect plaintiff's showing that he had a change of condition in August of 2001 under N.C. Gen. Stat. § 97-47.

Under plaintiff's initial disability from his carpal tunnel syndrome he was permitted to lift twenty to twenty-five pounds with each hand, with no restrictions on the amount of lifting he could perform during the day. Under the new restrictions imposed from the findings of the FCE, plaintiff was permitted to lift only twenty-one to fifty pounds for no more than two hours and thirty-six minutes each day. This indicates plaintiff's condition had worsened while working as a tire painter. While plaintiff could work the light duty job defendant-Michelin briefly assigned him before terminating his employment, plaintiff could not have returned to the regular duty jobs he had originally been working. Thus, plaintiff has shown a change in his physical capacity.

The Full Commission further found:

9. The plaintiff returned to work for approximately one week at a light duty position of splicing bands. He was sent home due to a lack of work and eventually the defendant-employer informed the plaintiff of a voluntary resignation program wherein he would be paid $13,112.80 to voluntarily resign from employment with the defendant-employer. The plaintiff executed the voluntary resignation, which provided that his last day of work was November 9, 2001. The record indicates that this program was available to a number of employees, regardless of their disability status. There is no indication that this payment was in any manner related to any compensation the plaintiff may have been due under the North Carolina Workers' Compensation Act.

Again, this finding is supported by competent evidence before this Court. The Full Commission also found as fact, and defendants do not challenge, that plaintiff subsequently obtained two jobs on his own, each of which did not affect his carpal tunnel syndrome and each of which paid less than plaintiff earned while working for defendant-Michelin. Thus, plaintiff's production of evidence that he has obtained other employment at a wage less than that earned prior to the injury is sufficient to show his change in physical condition has impacted his earning capacity.

The relevant findings of fact made by the Full Commission are supported by competent evidence in the record before this Court. These findings of fact support the Commission's conclusion of law that plaintiff suffered a "change in condition that increased his symptoms and impacted his earning capacity and his degree of disability." As plaintiff has shown a change of condition pursuant to N.C. Gen. Stat. § 97-47, the Full Commission has the authority to "make an award ending, diminishing, or increasing the compensation previously awarded[.]" N.C. Gen. Stat. § 97-47 (2005). The Full Commission did not err in concluding plaintiff was entitled to workers' compensation benefits for his partial disability under N.C. Gen. Stat. § 97-30, and correctly concluded plaintiff was entitled to two-thirds of the difference between his pre-injury wages and his wages earned while working with Homanit, USA and the City of Albemarle. N.C. Gen. Stat. § 97-30 (2005).

### Economic Downturn

[2] Defendants also argue the Commission erred in concluding that "[u]pon receipt of the plaintiffs new restrictions, the defendant-employer could no longer provide him with work, impacting his earning capacity." This Court has held that the Full Commission did not err in denying an employee benefits under the Workers' Compensation Act where the employee was physically able to perform his former job and the employee's inability to earn wages was due to a layoff resulting from a downturn in the economy *and* the employee's lack of interest in returning to work. *Segovia v. J.L. Powell & Co.*, 167 N.C. App. 354, 356-57, 608 S.E.2d 557, 558-59 (2004). Here, there is no evidence that plaintiff could have returned to a light duty job with defendant-Michelin that he was physically able to perform, and there is evidence that plaintiff diligently sought work following the termination of his employment by defendant-Michelin. Further, plaintiff was not physically able to work in his former regular-duty job. Defendants' argument is without merit and the Full Commission did not err in concluding plaintiff was entitled to benefits under the Workers' Compensation Act.

### Constructive Refusal of Employment

[3] Defendants additionally contend plaintiff is not entitled to recover any workers' compensation benefits due to his constructive refusal of employment. Specifically, defendants argue plaintiff is not entitled to benefits because plaintiff was fired from his job with Homanit, USA for excessive unexcused absences, and because he did

EUDY v. MICHELIN N. AM., INC.

[182 N.C. App. 646 (2007)]

not make any efforts to train himself in order to obtain better employment after defendant-Michelin terminated his employment. "[T]o bar payment of benefits [for refusal of suitable employment], an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 493, 597 S.E.2d 695, 699 (2004). However,

> a showing of employee misconduct is not dispositive on the issue of benefits if the employee can demonstrate that his or her subsequent failure to perform suitable work or find comparable work was the direct result of the employee's work-related injuries. . . . [T]he employee would be entitled to benefits if he or she can demonstrate that work-related injuries, and not the circumstances of the employee's termination, prevented the employee from either performing alternative duties or finding comparable employment opportunities.

*Id.* at 494, 597 S.E.2d at 299.

Here, the Full Commission found:

19. On March 13, 2003, the plaintiff was terminated by Homanit, USA, for excessive unexcused absences. The plaintiff's termination was not related to his compensable injury and was for reasons a non-disabled employee would have been terminated. . . .

20. The plaintiff continued to seek employment and on September 8, 2003, found work with the City of Albemarle as a water tester at a treatment plant. The plaintiff remains employed by the City of Albemarle; however, he is currently "laid off," pending his passing of an algebra test.

These findings are supported by competent evidence in the record before this Court. Based on these findings, the Full Commission concluded:

5. The plaintiff's termination from his employment with Homanit, USA, for excessive unexcused absences constitutes a constructive refusal of employment. The Court of Appeals in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996), stated that in order to bar payment of benefits, an employer must demonstrate that: (1) the employee was termi-

nated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury. *Id.* An employer's successful demonstration of such evidence is "deemed to constitute a constructive refusal" by the employee to perform suitable work, a circumstance that operates to bar benefits for lost earnings. *Id.* Accordingly, the plaintiff is not eligible for temporary total or temporary partial disability compensation for the period he was without employment following the termination from Homanit, USA.

Defendants argue plaintiff's unexcused absences constitute constructive refusal of suitable employment and is a complete bar to any future payment of workers' compensation benefits. Defendants argue in the alternative that the termination of plaintiff's employment with Homanit should relieve them of any requirement to pay workers' compensation benefits based on plaintiff's future earnings if plaintiff's future average weekly wage is less than what he earned while working at Homanit. Defendants also argue plaintiff's failure to "make any efforts to train himself in order to get better employment" is the reason why he is not making higher wages after his termination of employment with Homanit. Defendants contend plaintiff's failure to obtain a GED should be deemed a factor towards plaintiff's constructive refusal of employment.

"The constructive refusal defense is an argument that the employee's inability to earn wages at pre-injury levels is no longer caused by his injury; rather, the employer argues, the employee's misconduct is responsible for his inability to earn wages at pre-injury levels." *Williams v. Pee Dee Elec. Membership Corp.*, 130 N.C. App. 298, 301, 502 S.E.2d 645, 647 (1998). Defendants cite to no authority for the proposition that plaintiff's failure to obtain a GED constitutes misconduct which is responsible for his inability to earn wages at pre-injury levels, and this Court can find none. Nor have defendants introduced any evidence indicating plaintiff is even capable of obtaining a GED or that once obtained, the jobs available to plaintiff would provide higher wages than he currently earns. Additionally, plaintiff presented evidence that he diligently sought a new job after being fired by Homanit and his evidence supports that his work-related injuries, and not his unexcused absences, prevented him from finding "comparable employment opportunities." Thus, the Full Commission did not err in concluding plaintiff was barred from receiving workers' compensation benefits only for the

period of time he was without employment following the termination of his employment with Homanit.

*Multiple Remedies*

**[4]** Finally, defendants argue plaintiff is not entitled to recover under either N.C. Gen. Stat. § 97-29 or § 97-30 and recover under N.C. Gen. Stat. § 97-31 at the same time. Plaintiff has received permanent partial disability benefits under N.C. Gen. Stat. § 97-31, paid pursuant to the Form 21 agreement. Here, the Full Commission concluded "plaintiff has shown a change of condition and is entitled to benefits under N.C. Gen. Stat. § 97-30[.]" Plaintiff was never awarded benefits under N.C. Gen. Stat. § 97-29 and defendants' arguments concerning this provision are without merit. Plaintiff has shown a change of condition allowing the Full Commission to modify his award and grant him benefits under N.C. Gen. Stat. § 97-30, and defendants were given a credit for the benefits previously paid to plaintiff under § 97-31. Therefore, the Opinion and Award of the Full Commission does not award benefits under multiple sections of the Workers' Compensation Act.

Defendants' assignments of error are overruled.

Affirmed.

Judges McCULLOUGH and LEVINSON concur.