CLAUDE V. MEDLIN, Employee, Plaintiff
v.
WEAVER COOKE CONSTRUCTION, LLC, Employer,
KEY RISK INSURANCE COMPANY, Carrier, Defendants

No. COA 13-159

Filed 3 September 2013

**Workers' Compensation—disability—burden of proof**

The Industrial Commission did not err in a workers' compensation case by terminating plaintiff's ongoing compensation and awarding defendants a credit for all disability compensation paid after 22 December 2010 based on plaintiff's failure to meet his burden of proving disability from 22 December 2010 to the present. Plaintiff's earning capacity was affected solely by economic factors and not his injury.

Judge GEER dissenting.

MEDLIN v. WEAVER COOKE CONSTR., LLC

[229 N.C. App. 393 (2013)]

Appeal by plaintiff from the opinion and award entered 19 October 2012 by the North Carolina Industrial Commission. Heard in the Court of Appeals 5 June 2013.

*Oxner, Thomas and Permar, PLLC, by Michael G. Soto, for plaintiff-appellant*

*Brooks, Stevens and Pope, PA, by Joy Brewer, for defendant-appellees*

HUNTER, Robert C., Judge

Plaintiff Claude Medlin ("plaintiff") appeals from the opinion and award of the North Carolina Industrial Commission terminating his ongoing temporary total disability compensation and awarding defendants Weaver Cooke Construction and Key Risk Insurance Company (collectively "defendants") a credit for all temporary total disability compensation paid to plaintiff between 22 December 2010 and the date of termination. On appeal, plaintiff argues that the Industrial Commission erred in concluding that plaintiff had not met the burden of proving disability from 22 December 2010 to the present. After careful review, we affirm the opinion and award.

## Background

In April 2006, Weaver Cooke Construction ("Weaver") hired plaintiff. Plaintiff has a Bachelor's of Science degree in civil engineering from North Carolina State University and, since graduating in 1974, he has worked in the commercial construction industry as a project engineer, project manager, and estimator. Plaintiff worked as a project manager and estimator for Weaver.

Plaintiff injured his right shoulder while moving furniture at a work-site in May 2008. On 22 December 2008, Weaver accepted plaintiff's injury as compensable via Form 60, and plaintiff began receiving medical treatment. Plaintiff continued to work after his injury until being laid off on 21 November 2008. The parties stipulated in the pre-trial agreement that the reason for his layoff was a "reduction of staff due to lack of work." During this time, Weaver had to undergo widespread layoffs, and the total number of employees for Weaver dropped from 160 to 65 and estimator positions dropped from 8 to 4. Plaintiff began receiving unemployment benefits approximately the first week of January 2009. In February 2009, plaintiff began receiving temporary total disability benefits from defendants. From early 2009 until late March 2011, plaintiff received overlapping unemployment benefits and temporary total disability benefits.

The vast majority of facts regarding plaintiff's medical history are not necessary to address the issues in his appeal. In summary, after his injury, plaintiff began seeing Dr. Raymond Carroll for medical treatment. Dr. Carroll performed surgery on plaintiff's shoulder on 10 February 2009, and plaintiff began physical therapy. Plaintiff experienced an increase in right shoulder pain until he was discharged from physical therapy in April 2009. Dr. Carroll placed plaintiff at maximum medical improvement and released him to return to work without restrictions. After experiencing an increase in pain, plaintiff returned to Dr. Carroll who recommended surgery. Although defendants authorized the surgery, plaintiff decided to seek a second opinion. After receiving authorization from defendants, plaintiff changed his physician to Dr. Kevin Speer who placed plaintiff at maximum medical improvement and assigned permanent work restrictions of no lifting greater than ten pounds, no climbing ladders, and no repetitive overhead activities.

Following his layoff, plaintiff sought employment within the construction industry. Plaintiff estimated that he had made hundreds of job inquiries after being laid off.

On 22 December 2010, defendants filed an "Application to Terminate Payment of Compensation," arguing that plaintiff was no longer able to establish disability related to his injury since the only reason he could not obtain an estimator position with another employer was due to the economic downturn and not based on any physical restrictions. The matter came on for hearing before the Full Commission on 19 October 2012. Specifically, the Full Commission concluded that "[p]laintiff cannot establish disability secondary to his work-related injury at any time from 22 December 2010 to the present[.]" Thus, it terminated plaintiff's ongoing compensation and awarded defendants a credit for all disability compensation paid after 22 December 2010. Plaintiff timely appealed.

## Arguments

Plaintiff argues that the Full Commission erred in concluding that he was unable to prove disability between 22 December 2010 and the date of termination. Specifically, plaintiff contends that because he has shown that he is incapable of earning the same wages he had before his injury, even after engaging in reasonable efforts to find work, he has met his burden of proving disability. We disagree.

Review of an opinion and award of the Full Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This Court's duty goes no further

than to determine whether the record contains any evidence tending to support the finding.' " *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation omitted) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)).

Disability means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2011). In order to prove ongoing total disability, plaintiff must prove (1) the incapacity of earning pre-injury wages in the same employment, (2) the incapacity of earning pre-injury wages in any other employment, and (3) that this incapacity to earn wages is caused by the injury. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). "A determination of whether a worker is disabled focuses upon impairment to the injured employee's earning capacity rather than upon physical infirmity." *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 707, 599 S.E.2d 508, 513 (2004); *see also Peoples v. Cone Mills Corp.*, 316 N.C. 426, 437, 342 S.E.2d 798, 805 (1986) (holding that an injured employee's earning capacity must be measured by the employee's own ability to compete in the labor market).

The dissent utilizes the analytical framework set out in *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993) to assert that plaintiff has met his burden of production. The purpose of the four-pronged *Russell* test is to provide channels through which an injured employee may demonstrate the required "link between wage loss and the work-related injury." *See Fletcher v. Dana Corp.*, 119 N.C. App. 491, 494-99, 459 S.E.2d 31, 34-36 (1995) (noting that the Russell test is an evidentiary tool used to show a causal connection between injury and wage loss). The second prong of the test, which the dissent argues has been met by plaintiff, reads "[t]he employee may meet this burden [by producing] . . . evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment." *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457. However, implied in this prong is the causal connection between the injury and the unsuccessful attempt at finding employment. *See id.* ("The burden is on the employee to show that he is unable to earn the same wages he had earned *before the injury*[.]") (emphasis added). Indeed, the *Fletcher* court's holding is based on its conclusion that "but for the work-related injury she sustained, [the plaintiff] would not have become unemployed and suffered wage loss in consequence of the unavailability of other employment." *Fletcher*, 119 N.C. App. at 497, 459 S.E.2d at 35.

## MEDLIN v. WEAVER COOKE CONSTR., LLC

[229 N.C. App. 393 (2013)]

The dissent favorably quotes the *Fletcher* court's observation that "the partially disabled employee's only burden is to show he is unable to earn wages *because of his injury*, not that he must show that the economy or other factors are not the cause of unemployment." *Id.* at 499, 459 S.E.2d at 37 (emphasis added). As is discussed in detail below, plaintiff failed to show *any* causal connection between his injury and subsequent wage loss. We therefore disagree with the dissent and find that the second prong of the *Russell* test has not been met.

In determining that plaintiff had not met his burden of proving disability, Full Commission found:

> 25.  On 18 November 2010, Gregory B. Henderson, a vocational case manager and President of VocMed, conducted a targeted labor market survey in which two employers in the commercial construction industry of similar size and geographic location confirmed that someone with Plaintiff's restrictions was physically capable of performing the job duties required by the Estimator position.
>
> 26.  In an updated labor market survey conducted by Mr. Henderson on July 18, 2011, an additional three employers confirmed that someone with Plaintiff's restrictions was physically capable of performing the job duties required by the Estimator position.
>
> 27.  Mr. Henderson offered testimony as an expert in the field of vocational rehabilitation. Mr. Henderson opined that Plaintiff has the vocational skills and physical capabilities needed to perform work as an Estimator. He further opined that Plaintiff would be able to return to work as an Estimator but for the current economic downturn.

In other words, the Full Commission found that the only reason plaintiff is unable to find employment was based on the economic downturn and was not related to his injury. Based on these findings, the Full Commission concluded that "[a] [p]laintiff is unable to meet their [sic] burden of proving disability where, but for economic factors, the employee is capable of returning to his pre-injury position." Thus, plaintiff's inability to obtain his pre-injury wages was "attributable to large-scale economic factors," not due to his injury, and he was not entitled to receive disability compensation.

In reaching this conclusion the Full Commission relied on *Segovia v. J.L. Powell & Co.*, 167 N.C. App. 354, 608 S.E.2d 557 (2004). In

*Segovia,* the plaintiff suffered compensable injuries by accident. 167 N.C. App. at 354, 608 S.E.2d at 557. His employer admitted liability and began paying temporary total disability benefits. *Id.* at 355, 608 S.E.2d at 558. During this time period, the plaintiff was laid off by his employer due to a decline in business. *Id.* After the employer filed a request to stop paying disability compensation, the Full Commission terminated the plaintiff's compensation, concluding that his loss of earnings was not due to any disability arising from the injury. *Id.*

On appeal, this Court affirmed, noting that competent evidence supports the findings that the plaintiff was laid off solely to a decline in business and not due to any restrictions due to his injuries. *Id.* at 356-57, 608 S.E.2d at 559. Moreover, we found that these findings supported the Full Commission's conclusion that the "plaintiff's earning capacity [was] not currently affected by the injuries he suffered." *Id.* at 357, 608 S.E.2d at 559. Thus, we affirmed the Full Commission's determination that the plaintiff was not disabled pursuant to N.C. Gen. Stat. § 97-2(9). *Id.*

Like *Segovia,* plaintiff was laid off from his job as an estimator due to the economic downturn. Moreover, the uncontested findings of fact establish that plaintiff's inability to earn his pre-injury wages is not attributable to his injury but is based solely on the large-scale economic downturn affecting the construction industry as a whole. Applying *Segovia,* plaintiff is unable to prove disability since his earnings capacity is not affected by his May 2008 injury. Therefore, we conclude that the Full Commission did not err in concluding that plaintiff is not currently disabled as a result of his injuries and not entitled to disability compensation.

Plaintiff argues that the Full Commission improperly applied the law from *Segovia;* instead, plaintiff contends that *Eudy v. Michelin N. Am., Inc.,* 182 N.C. App. 646, 654, 645 S.E.2d 83, 89, *disc. rev. denied,* 361 N.C. 426, 648 S.E.2d 211 (2007), and *Graham v. Masonry Reinforcing Corp. of Am.,* 188 N.C. App. 755, 760, 656 S.E.2d 676, 680 (2008), require a conclusion that plaintiff met his burden of proving disability by showing he had diligently searched for work. In other words, plaintiff seems to argue that, pursuant to *Eudy* and *Graham,* an employee whose earning capacity is affected solely by economic factors, not an injury, can still establish a showing of disability by introducing evidence that he has diligently searched for work.

Plaintiff's reliance is misplaced as the facts of *Eudy* and *Graham* are quite different from the present case. In *Eudy,* 182 N.C. App. at 654, 645 S.E.2d at 89, the laid off employee was "not physically able to work

his regular-duty job" and he sought light-duty work he could perform within his physical restrictions. Likewise in *Graham*, 188 N.C. App. at 760, 656 S.E.2d at 680, the laid off employee was not physically capable of performing his former job and sought different work due to the physical restrictions of a hip injury. Here, unlike the employees in *Eudy* and *Graham*, plaintiff is physically able to perform his pre-injury job, and he is seeking and has applied for the same type of position. He is not subject to any restrictions that would affect his ability to work in his pre-injury position. Thus, *Eudy* and *Graham* are not applicable to the present case, and plaintiff's argument is without merit. Instead, based on *Segovia*, the Full Commission did not err in concluding that plaintiff failed to meet his burden of showing he was disabled regardless of his reasonable attempts to find employment.

## Conclusion

Based on the foregoing reasons, we hold that the Full Commission did not err in concluding that plaintiff's incapacity to earn his pre-injury wages was not caused by his injuries. Therefore, we affirm the opinion and award of the Full Commission.

AFFIRMED.

Judge McCULLOUGH concurs.

GEER, Judge dissenting.

The sole issue on appeal is whether plaintiff has met his burden in establishing disability arising out of his admittedly compensable injury. Because the Commission's opinion and award does not apply the controlling analytical framework set out in *Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993), I would reverse and remand. I do not believe that the issue in this case can be resolved without consideration of *Russell* and, yet, the Commission's opinion and award does not even mention *Russell*. Although the majority opinion concludes that *Russell* is inapplicable given the facts of this case, I disagree with its analysis of *Russell,* and I cannot agree that this Court should be addressing the applicability of each of the *Russell* prongs in the first instance. I must, therefore, respectfully dissent.

Both the majority opinion and the Commission's opinion and award point to *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982), in which our Supreme Court held that an employee has the burden of proving "(1) that plaintiff was incapable after his injury of

earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury." The majority opinion seems to be holding that the *Russell* framework does not encompass the third prong of *Hilliard* requiring proof that the employee's incapacity to earn wages was caused by the compensable injury.

However, the majority opinion and the Commission overlook the holding in *Demery v. Perdue Farms, Inc.*, 143 N.C. App. 259, 545 S.E.2d 485, *aff'd per curiam*, 354 N.C. 355, 554 S.E.2d 337 (2001). This Court, as affirmed by the Supreme Court, explained an employee's burden of proving "the existence of a disability under [the Workers' Compensation Act]." *Id.* at 264, 545 S.E.2d at 489. The Court emphasized that " '[d]isability,' within the meaning of the . . . North Carolina Workers' Compensation Act, is defined as 'incapacity *because of injury* to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' " *Id.* (emphasis added) (quoting N.C. Gen. Stat. § 97-2(9) (1999)). In other words, proof of "disability," as defined by the Workers' Compensation Act, encompasses not only proof of an inability to earn the same wages, but also proof that the inability was caused by the compensable injury.

This Court pointed to *Hilliard*, as the majority and the Commission do in this case, regarding what "an employee has the burden of proving" in order "[t]o show the existence of a disability under [the Workers' Compensation Act]":

> To show the existence of a disability under this Act, an employee has the burden of proving:
>
> > (1) that [she] was incapable after [her] injury of earning the same wages [she] had earned before [her] injury in the same employment, (2) that [she] was incapable after [her] injury of earning the same wages [she] had earned before [her] injury in any other employment, and (3) that [her] incapacity to earn was caused by [her] injury.
>
> *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). *The employee may meet her initial burden of production by producing:*
>
> > (1)  . . . medical evidence that [she] is physically or mentally, as a consequence of the work

> related injury, incapable of work in any employment; (2) . . . evidence that [she] is capable of some work, but that [she] has, after a reasonable effort on [her] part, been unsuccessful in [her] effort to obtain employment; (3) . . . evidence that [she] is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) . . . evidence that [she] has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citation omitted).

*Demery*, 143 N.C. App. at 264-65, 545 S.E.2d at 489-90 (emphasis added).

In other words, to prove "disability" -- which encompasses both incapacity and causation, as *Hilliard* holds -- the employee must meet one of the prongs of *Russell*. If the employee meets that initial burden of production, then "the burden of production shifts to the employer to show that suitable jobs are available and that the employee is capable of obtaining a suitable job taking into account both physical and vocational limitations." *Id.* at 265, 545 S.E.2d at 490 (internal quotation marks omitted). The Court concluded by observing, citing *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683, that "[t]he burden of proving a disability, however, remains on the employee." *Demery*, 143 N.C. App. at 265, 545 S.E.2d at 490.

I cannot see any way to read *Demery* -- which is an opinion of the Supreme Court by virtue of the *per curiam* affirmance -- as allowing the analysis adopted by the majority opinion and the Commission in this case. While some panels of this Court have suggested that the *Russell* methods of proof apply only to the first two prongs of *Hilliard*, *see, e.g., Graham v. Masonry Reinforcing Corp. of Am.*, 188 N.C. App. 755, 759, 656 S.E.2d 676, 679 (2008) (explaining that "[t]his Court has stated a claimant may prove the first two prongs of *Hilliard* through" one of four *Russell* prongs), *Demery*, because it was affirmed by the Supreme Court, is controlling.

Consequently, I would hold that the Commission erred in failing to apply the *Russell* analytical framework and also believe the majority opinion misapplies the controlling law. Indeed, the majority opinion

notes that "[t]he purpose of the four-pronged *Russell* test is to provide channels through which an injured employee may 'show a link between wage loss and the work-related injury' as is required by *Hilliard*." (Quoting *Fletcher v. Dana Corp.*, 119 N.C. App. 491, 499, 459 S.E.2d 31, 36 (1995)) A "link" between wage loss and the compensable injury is the causation requirement set out in the third prong of *Hilliard*, which is the basis for the conclusion reached by the Commission and the majority opinion. In other words, *Fletcher*, on which the majority opinion relies, agrees with *Demery* that the *Russell* test not only establishes the method of proving wage loss, but also provides an employee with the method for linking that wage loss to his or her compensable injury.

Here, plaintiff contends that he met his burden of production as to the existence of his disability under *Russell's* second method of proof. It is undisputed that he is capable of some work, although the record also contains evidence that he has restrictions resulting from the compensable injury. The Commission found that "Dr. Speer restricted Plaintiff from lifting over ten (10) pounds or engaging in repetitive overhead activities." The Commission further found that "[f]ollowing his layoff, Plaintiff sought subsequent employment within the construction industry." The Commission made no finding regarding whether plaintiff's efforts to obtain other employment were reasonable, but plaintiff presented evidence that he made numerous job inquiries and was unable to obtain employment.

I would hold that plaintiff's evidence was sufficient, if believed, to meet the second prong of *Russell*. The burden of production, therefore, would then shift to defendants to show that there were suitable jobs that plaintiff was capable of obtaining. The Commission never shifted the burden to defendants, and its findings do not suggest that defendants met that burden. The Commission's findings establish only that plaintiff was physically capable of performing the duties of his prior position and similar positions with other employers. They do not address whether there were any jobs that plaintiff could actually obtain.

Instead of applying the well-established *Russell* burden-shifting framework, the Commission held, as a matter of law, that "[a] Plaintiff is unable to meet their [sic] burden of proving disability where, but for economic factors, the employee is capable of returning to his pre-injury position." As support for this broad statement, the Commission cites only *Segovia v. J.L. Powell & Co.*, 167 N.C. App. 354, 608 S.E.2d 557 (2004). *Segovia* does not stand for that sweeping proposition, as this Court has previously recognized.

In *Segovia*, the Commission found that " 'the plaintiff's inability to earn wages since March 2001 was due to the layoff and plaintiff's lack of interest in returning to work, and not due to any disability associated with plaintiff's injury.' " *Id.* at 356, 608 S.E.2d at 559. The Commission then found that plaintiff had been offered a part-time job and " '[t]he evidence establishe[d] that work was available which was suitable for plaintiff' " in the marketplace. *Id.* Yet, "plaintiff appeared to be trying to sabotage efforts to find alternative employment." *Id.*

This Court, in affirming, concluded that the Commission's findings were supported by (1) evidence that the plaintiff performed his job satisfactorily and was laid off because of a decline in business, (2) evidence that the parties stipulated plaintiff had no restrictions due to his compensable injury after a specified date, and (3) evidence regarding the plaintiff's vocational rehabilitation and employment prospects. *Id.* at 356-57, 608 S.E.2d at 559. The Court then concluded simply that "[t]hese findings support the full Commission's conclusion that plaintiff's earning capacity is not currently affected by the injuries he suffered to his back and ear." *Id.* at 357, 608 S.E.2d at 559.

Contrary to the Commission's opinion and award in this case, the *Segovia* panel did not hold that an employee "is unable to meet [his] burden of proving disability where, but for economic factors, the employee is capable of returning to his pre-injury position." Critical to the Commission's decision in *Segovia* and this Court's affirmance of that decision was not only the fact that the plaintiff was laid off, but *also* the facts that (1) the plaintiff had no restrictions arising out of his injuries, (2) suitable jobs were available to the plaintiff, and (3) the plaintiff was not interested in returning to work as demonstrated by his interference with efforts to find him alternative employment. In other words, the plaintiff in *Segovia* could not meet his burden under any of the prongs of *Russell*.

This Court has previously expressly rejected attempts to construe *Segovia* in the manner that the Commission did in this case and as the majority opinion does. In *Eudy v. Michelin N. Am., Inc.*, 182 N.C. App. 646, 654, 645 S.E.2d 83, 89 (2007) (emphasis added), the Court explained that in *Segovia*, "[t]his Court . . . held that the Full Commission did not err in denying an employee benefits under the Workers' Compensation Act where the employee was physically able to perform his former job and the employee's inability to earn wages was due to a layoff resulting from a downturn in the economy *and the employee's lack of interest in returning to work.*"

Similarly, in *Graham*, although the Commission had concluded that the plaintiff proved disability under the second prong of *Russell*, the defendants argued on appeal, citing *Segovia*, that the Commission erred because the plaintiff's termination from his employment with the defendant employer "was due to an economic downturn and plaintiff's personal misconduct." *Id.* at 758, 656 S.E.2d at 679. This Court affirmed the Commission based on its application of the *Russell* analytical framework. *Id.* at 760, 656 S.E.2d at 680. The Court distinguished *Segovia* by quoting *Eudy*'s description of *Segovia* as involving not just an economic downturn and then noted that while the Commission in *Graham* had properly determined that the plaintiff met his burden of proving disability under the second prong in *Russell*, the plaintiff in *Segovia* was physically able to do his job. *Id.* at 761, 656 S.E.2d at 680.

The Court in *Graham* then further addressed the defendants' argument that the plaintiff could not prove disability because his lack of employment was due to an economic downturn:

> "Defendants have focused on the wrong issue. While the immediate cause of the loss of plaintiff's wages . . . may have been the lay-off, that fact does not preclude a finding of disability. As *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 437, 342 S.E.2d 798, 805 (1986) explained, an injured employee's earning capacity is determined by the employee's own ability to compete in the labor market. Thus, the fact that plaintiff was laid off does not preclude a finding of total disability if, because of plaintiff's injury, he was incapable of obtaining a job in the competitive labor market."

*Id.*, 656 S.E.2d at 680-81 (quoting *Britt v. Gator Wood, Inc.*, 185 N.C. App. 677, 683, 648 S.E.2d 917, 921 (2007)).

Thus, *Eudy* recognized that *Segovia* involved not only a lay-off, but also an employee who, although able to work, had made no effort to return to work, while *Graham* held that *Segovia* did not apply when an employee had made the showing mandated by *Russell*. *See also Britt*, 185 N.C. App. at 683, 648 S.E.2d at 921 (rejecting defendants' argument that employee was not disabled because his loss of wage earning capacity was not the result of injury by accident but instead was due to economic downturn).

A critical distinction between these cases, as well as this case, and *Segovia* is that the plaintiffs in *Eudy*, *Graham*, and *Britt* were all at least partially disabled, as demonstrated by the existence of physical restrictions -- the issue was whether that disability was causing any wage loss,

just as is true in this case. In *Segovia*, the plaintiff was no longer disabled. He was simply unemployed.

While the majority opinion attempts to distinguish *Eudy* and *Graham* factually, it never addresses those opinions' discussion of *Segovia* or the language in the actual *Segovia* opinion limiting its holding. In addition, the majority opinion incorrectly states that the laid off employee in *Graham* was not physically capable of performing his former job and, for that reason, sought different work. In fact, the defendants in *Graham* contended that the employee, who was an accountant, was fired because of "economics" and poor job performance. 188 N.C. App. at 757, 656 S.E.2d at 678. Neither the Commission nor this Court's opinion in *Graham* suggested that the employee was unable to perform his prior job as an accountant because of his physical restrictions. *Id.* at 756-57, 656 S.E.2d at 678.

Further, the *Segovia* Court could not have reached the conclusion attributed to it by the Commission in this case without running afoul of *Fletcher*. In *Fletcher*, the Commission awarded temporary total disability even though the plaintiff was able to work despite physical restrictions when the plaintiff made extensive, although unsuccessful, efforts to gain employment over 17 months. 119 N.C. App. at 492-93, 459 S.E.2d at 33. The defendants argued that the Commission had misapplied *Russell* by focusing " 'on whether plaintiff was able *to actually obtain* employment' instead of whether plaintiff was capable of earning the same wages." *Id.* at 494, 459 S.E.2d at 34. The defendants asserted that "the holding of the full Commission in reliance upon *Russell* 'in effect convert[ed] temporary total disability [in]to unemployment compensation.' " *Id.* at 495, 459 S.E.2d at 34.

This Court in *Fletcher* affirmed the Commission's award, holding that "an employee who suffers a work-related injury is not precluded from workers' compensation benefits when that employee, while employable within limitations in certain kinds of work, cannot after reasonable efforts obtain employment *due to unavailability of jobs.*" *Id.* at 500, 459 S.E.2d at 37 (emphasis added).

In reaching this holding, the Court pointed to the purpose of the Workers' Compensation Act: " '[T]he Workers' Compensation Act was enacted to ameliorate the consequences of injuries and illnesses in the workplace and one of those consequences, at least on occasion, is that a recuperated worker capable of holding a job cannot get one. A capable job seeker whom no employer needing workers will hire is not employable.' " *Id.* at 495, 459 S.E.2d at 34 (quoting *Bridges v. Linn-Corriher*

*Corp.*, 90 N.C. App. 397, 399-400, 368 S.E.2d 388, 390 (1988)). *See also id.* at 496, 459 S.E.2d at 35 (" 'The fact that the wage loss comes about through . . . unavailability of employment rather than through incapacity to perform the work does not change the result [of disability].' " (quoting 1C Arthur Larson, *Larson's Workmen's Compensation Law*, § 57-61(a), 10-389-97)).

The Court in *Fletcher* based its holding in part on opinions from Florida and Michigan, finding that "[t]he rationale of the foregoing authorities is sound and consistent with" our Court's holdings in *Russell* and *Bridges.* 119 N.C. App. at 500, 459 S.E.2d at 37. The *Fletcher* Court quoted the Florida District Court of Appeal: " '[I]n the broadest sense, "able to earn" takes into account many factors, *including the availability of jobs,* and such a broad interpretation is consistent . . . with the principle which requires a liberal construction in favor of the injured employee.' " *Id.* at 496, 459 S.E.2d at 35 (emphasis added) (quoting *Regency Inn v. Johnson*, 422 So. 2d 870, 875 (Fla. Dist. Ct. App. 1982)).

With respect to the argument that the Commission in effect converted workers' compensation benefits into unemployment benefits, the Court quoted approvingly the Michigan Supreme Court: " '[A] disabled worker does not bear the burden of unfavorable economic conditions that further diminish his ability to find suitable work.' " *Id.* at 499, 459 S.E.2d at 36 (quoting *Sobotka v. Chrysler Corp.*, 447 Mich. 1, 25, 523 N.W.2d 454, 463 (1994)). The Court further quoted: " 'This means that the partially disabled employee's *only burden* is to show he is unable to earn wages because of his injury, *not that he must show that the economy or other factors are not the cause of unemployment.*' " *Id.* (emphasis added) (quoting *Sobotka,* 447 Mich. at 8 n.5, 523 N.W.2d at 455 n.5).

Regarding the burden of production, the *Fletcher* Court quoted the Michigan Supreme Court: " '[I]t is the employee's burden to show a link between wage loss and the work-related injury. . . [.] [O]nce the employee shows a work-related injury and subsequent wage loss, the factfinder may infer that the employee cannot find a job because of the injury.' " *Id.* (quoting *Sobotka,* 447 Mich. at 25, 523 N.W.2d at 463).

In North Carolina, as this Court acknowledged in *Demery* and *Fletcher*, an employee meets his burden of showing work-related disability through the four-pronged *Russell* test. Once the employee makes that showing, then the Commission may infer that the employee cannot find a job because of his injury. Under *Fletcher*, the employee is *not* required to show " 'the economy or other factors are not the cause of [his] unemployment.' " *Id.* (quoting *Sobotka,* 447 Mich. at 8 n.5, 523 N.W.2d at

455 n.5). Yet, that is precisely the burden that the Commission and the majority opinion have placed on plaintiff in this case: the burden of proving that his unemployment was not due to the economy.

Because I believe, in light of the above authority, that the Commission acted under a misapprehension of law, I would reverse and remand for reconsideration. I believe the Commission should have determined whether plaintiff met his burden of production under *Russell* and, if so, whether defendants met their burden of showing that suitable jobs existed in the economy for plaintiff that he could actually obtain. The Commission swept aside -- unmentioned -- 40 years of authority that has been consistently applied and reached a conclusion that is squarely inconsistent with *Fletcher* and subsequent decisions.

It is too simplistic to assume, as the Commission did and the majority opinion does, that in a down economy, an employable employee with restrictions cannot show that his difficulties in obtaining another job are due to his injury. The *Russell* tests take into account the likelihood that prospective employers may prefer, in difficult economic conditions, to hire employees without restrictions. When presented with applicants who have no restrictions competing for a position with applicants with restrictions, we should recognize not only (1) that the prospective employers may well choose an applicant without restrictions, but also (2) that an employee is unlikely to be able to prove that he lost out on the job because of his restrictions. I, therefore, respectfully dissent.