IN THE SUPREME COURT OF NORTH CAROLINA

No. 411A13

FILED 12 JUNE 2014

CLAUDE V. MEDLIN, Employee

v.

WEAVER COOKE CONSTRUCTION, LLC,
          Employer,

KEY RISK INSURANCE COMPANY,
          Carrier

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 748 S.E.2d 343 (2013), affirming an opinion and award filed on 19 October 2012 by the North Carolina Industrial Commission. Heard in the Supreme Court on 18 February 2014.

*Oxner, Thomas + Permar, by Michael G. Soto, for plaintiff-appellant.*

*Brewer Law Firm, P.A., by Joy H. Brewer and Ginny P. Lanier, for defendant-appellees.*

*Sumwalt Law Firm, by Vernon Sumwalt, for North Carolina Advocates for Justice, amicus curiae.*

*Young Moore and Henderson P.A., by Angela Farag Craddock, for North Carolina Association of Defense Attorneys, North Carolina Association of Self-Insurers, and North Carolina Chamber, amici curiae.*

HUDSON, Justice.

Plaintiff Claude Medlin appealed the opinion and award of the North Carolina Industrial Commission terminating his temporary disability payments and

awarding defendants Weaver Cooke Construction, LLC ("Weaver") and Key Risk Insurance Company a credit for all disability payments made to Medlin after 22 December 2010. ___ N.C. App. ___, ___, 748 S.E.2d 343, 344 (2013). On appeal, the Court of Appeals affirmed the Commission in a divided opinion. The majority held that the Commission's binding findings of fact show that plaintiff's inability to find work was not due to his injury, but rather to large-scale economic factors. *Id.* at ___, 748 S.E.2d at 347. Because we agree that plaintiff has not shown that his inability to earn the same wages as before his injury resulted from his work-related injury, we affirm.

### Background

Plaintiff graduated from North Carolina State University in 1974 with a degree in civil engineering. Since then he has worked in the commercial construction industry in several different capacities, including as a project engineer, supervisor, project manager, and estimator. In April of 2006, defendant Weaver hired plaintiff and he worked for the company as both a project manager and an estimator. *Id.* at ___, 748 S.E.2d at 344. As an estimator, plaintiff helped Weaver obtain construction jobs by pricing the estimate to ensure that those jobs could be completed under budget; this job was sedentary, but required that plaintiff be able to lift and carry up to ten pounds occasionally. As a project manager, plaintiff actually managed the construction projects; this job was at least slightly more physically demanding than the estimator position.

Plaintiff injured his right shoulder in May 2008 while helping to move a large credenza, then exacerbated the injury later that day when moving a fifty pound box of files. *See id.* at ___, 748 S.E.2d at 344. After this injury, he continued to work for Weaver until 21 November 2008, when he was terminated as part of widespread layoffs both within the company, and within the construction industry as a whole. *See id.* at ___, 748 S.E.2d at 344. The reason given for plaintiff's layoff was "reduction of staff due to lack of work." *Id.* at ___, 748 S.E.2d at 344. On 22 December 2008, after plaintiff was laid off, Weaver accepted his injury as compensable and submitted Industrial Commission Form 60. *Id.* at ___, 748 S.E.2d at 344. In January 2009, plaintiff began to receive unemployment benefits from defendants; the next month, he began to receive temporary total disability payments as well. *Id.* at ___, 748 S.E.2d at 344-45. These overlapping benefits continued until late March 2011. *Id.* at ___, 748 S.E.2d at 345.

Starting in late 2008, plaintiff began medical treatment for his shoulder, primarily at the hands of Raymond Carroll, M.D., and Kevin Speer, M.D. *See id.* at ___, 748 S.E.2d at 345. Dr. Carroll performed surgery on plaintiff's shoulder on 10 February 2009, and plaintiff began physical therapy. *Id.* at ___, 748 S.E.2d at 345. However, plaintiff's shoulder pain worsened until he was discharged from therapy in April 2009. *Id.* at ___, 748 S.E.2d at 345. An MRI conducted late in 2009 showed that plaintiff may have suffered a superior labral tear to his shoulder; but because this tear was not present at the time of the surgery performed earlier that year, Dr.

Carroll concluded that it had not been caused by the May 2008 work injury. Both Dr. Carroll and Dr. Speer eventually placed plaintiff at maximum medical improvement, though plaintiff was assigned permanent work restrictions preventing him from lifting weights greater than ten pounds, climbing ladders, or performing repetitive overhead activities. *Id.* at ___, 748 S.E.2d at 345.

During the period following his layoff, plaintiff sought employment within the construction industry. Although he estimated that he made hundreds of job inquiries, plaintiff was unable to find equivalent work in that industry. *Id.* at ___, 748 S.E.2d at 345. Eventually, on 22 December 2010, defendants filed an "Application to Terminate Payment of Compensation," alleging that plaintiff could no longer show that he was disabled. *Id.* at ___, 748 S.E.2d at 345. More specifically, defendants argued that plaintiff could not show that he was legally disabled because his inability to find another position as an estimator was due to the economic downturn, rather than to any physical limitations. *Id.* at ___, 748 S.E.2d at 345.

Deputy Commissioner Philip A. Baddour, III heard this matter on 17 May 2011, and subsequently received the depositions of Dr. Speer, Dr. Carroll, Sandy J. Kimmel, D.O., and vocational case manager Gregory Henderson. The Deputy Commissioner denied plaintiff's claim for disability compensation after 22 December 2010, and awarded defendants a credit for all unemployment benefits plaintiff received during the time he also received disability compensation. Plaintiff

appealed to the Full Commission.

The Full Commission heard the case on 4 September 2012. The Commission considered the parties' stipulations, several exhibits, and the testimony of several witnesses, including plaintiff, Dr. Carroll, Dr. Speer, Dr. Kimmel, and Mr. Henderson. Based on that evidence, the Commission made the following relevant findings of fact:

> 1. Plaintiff holds a Bachelor[ ] of Science degree in civil engineering. Since graduating in 1974, he has worked for several general contractors in the commercial construction context. Specifically, he has worked as a Project Engineer, Supervisor, Senior Estimator, and ultimately as a Project Manager on construction projects involving hospitals, prisons, and schools, among other things.
>
> . . . .
>
> 5. Plaintiff was laid off by Defendant-Employer on 21 November 2008 due to a reduction in Defendant-Employer's staff secondary to a lack of available work. This lack of available work experienced by Defendant-Employer is part of a larger economic downturn which has adversely affected the construction industry as a whole. In the parties' Pre-Trial Agreement, the parties stipulated that "Plaintiff continued working following the injury and was laid off due to lack of work on November 21, 2008."
>
> . . . .
>
> 10. On 20 May 2009, Dr. Carroll discharged Plaintiff from his care and released him to return to work without restrictions.
>
> 11. Plaintiff's medical care was subsequently

transferred to Dr. Kevin Speer, an orthopaedic surgeon . . . . On 23 July 2009, Dr. Speer restricted Plaintiff from lifting over ten (10) pounds or engaging in repetitive overhead activities.

12. In late 2009, an MRI arthrogram of Plaintiff's right shoulder showed evidence of a possible superior labral tear which was not present at the time of the February 2009 surgery. Because the potential tear was not present in February 2009, Dr. Carroll opined to a reasonable degree of medical certainty that the tear was unrelated to the May 2008 work injury. Dr. Carroll further opined that it may be related to the weightlifting engaged in by Plaintiff following the February 2009 surgery.

. . . .

22. Following his layoff, Plaintiff sought subsequent employment within the construction industry.

23. The position of Estimator is classified as a sedentary duty job by the *Dictionary of Occupational Titles*.

24. On 21 June 2010, VocMed conducted a job analysis for Plaintiff's pre-injury Estimator position. The analysis indicated that the job required lifting and carrying up to ten (10) pounds on an occasional basis.

25. On 18 November 2010, Gregory B. Henderson, a vocational case manager and President of VocMed, conducted a targeted labor market survey in which two employers in the commercial construction industry of similar size and geographic location confirmed that someone with Plaintiff's restrictions was physically capable of performing the job duties required by the Estimator position.

26. In an updated labor market survey conducted by Mr. Henderson on 18 July 2011, an additional three

employers confirmed that someone with Plaintiff's restrictions was physically capable of performing the job duties required by the Estimator position.

27. Mr. Henderson offered testimony as an expert in the field of vocational rehabilitation. Mr. Henderson opined that Plaintiff has the vocational skills and physical capabilities needed to perform work as an Estimator. He further opined that Plaintiff would be able to return to work as an Estimator, but for the current economic downturn.

28. Eddie Carroll, Defendant-Employer's Senior Vice President of Pre-Construction, testified that Plaintiff could perform each of the regular duties of the Estimator position within his current restrictions.

Based on these findings of fact, the Commission concluded that plaintiff was not entitled to any disability payments made after 22 December 2010 (the date defendants filed the application to terminate payments), and that defendants were entitled to a credit for any payments they had made after that date. More specifically, the Full Commission made the following relevant conclusions of law:

2. In order to meet the burden of proving disability, Plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. A Plaintiff is unable to meet their burden of proving disability where, but for economic factors, the employee is capable of returning to his pre-injury position.

3. Plaintiff would be capable of returning to work as an Estimator with either Defendant-Employer or a competitor company, but for the current economic downturn affecting both Defendant-Employer as well as the construction industry as a whole. As such, any lost

wages Plaintiff experienced from 22 December 2010 to the present are attributable to large-scale economic factors and are unrelated to Plaintiff's May 2008 work injury. Accordingly, Plaintiff cannot establish disability secondary to his work-related injury at any time from 22 December 2010 to the present, and therefore Defendants are entitled to terminate disability compensation.

4. Defendants are entitled to a credit for temporary total disability compensation paid to Plaintiff after 22 December 2010 (the date of Defendants' . . . Application to Terminate Compensation) through the date of termination.

(citations omitted). From this opinion and award, plaintiff appealed.

In a divided opinion, the Court of Appeals affirmed the Full Commission. *Id.* at ___, 748 S.E.2d at 347. The majority did not apply its own precedent, *Russell v. Lowe's Product Distribution*, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Instead, it emphasized that, under this Court's opinion in *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E.2d 682 (1982), a plaintiff seeking to establish disability must show that his inability to earn the same wages as before the injury was a result of his work-related injury. As such, the majority reasoned, the Commission's finding that "the only reason plaintiff is unable to find employment was based on the economic downturn and was not related to his injury" was sufficient to defeat plaintiff's disability claim. ___ N.C. App. at ___, 748 S.E.2d at 347. The dissenting opinion, in contrast, pointed to *Russell* and would have held that proving disability by one of the *Russell* methods also necessarily proves the causation requirement described in *Hilliard*. *Id.* at ___, 748 S.E.2d at 348 (Geer, J., dissenting). The

dissent also concluded that plaintiff had proved disability through the second *Russell* method by providing evidence showing that he was capable of some work, but was unable, after reasonable efforts, to obtain employment. *Id.* at ___, 748 S.E.2d at 349. We now turn to the substance of this disagreement.

## The Applicable Law

We note and reaffirm that in *Hilliard* this Court held that under the Workers' Compensation Act, a claimant seeking disability must establish that his inability to find work was "because of" his work-related injury. N.C.G.S. § 97-2(9) (2013). On the record before us, plaintiff failed to do so, and so we affirm the decision of the Court of Appeals.

Since the Workers' Compensation Act was first enacted in 1929, the General Assembly has defined the term "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." *Id.* §§ 97-2(9) (2013), -2(i) (1930). This definition, we have long and consistently held, specifically relates to the incapacity to earn wages, rather than only to physical infirmity. *See, e.g.*, *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 378-79 (1986); *Fleming v. K-Mart Corp.*, 312 N.C. 538, 541, 324 S.E.2d 214, 216 (1985). In *Hilliard*, we articulated again the three factual elements that a plaintiff must prove to support the legal conclusion of disability:

We are of the opinion that in order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

305 N.C. at 595, 290 S.E.2d at 683 (citation omitted). The burden of proving the existence and extent of a disability is generally carried by the claimant. *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 493 (2005) (citing *Hendrix*, 317 N.C. at 185, 345 S.E.2d at 378).

In *Russell v. Lowe's Product Distribution*, the Court of Appeals applied *Hilliard* to a worker's compensation claim that arose when the claimant fell from the top of a row of boxes while unloading a truck. *See* 108 N.C. App. at 762, 425 S.E.2d at 455. The Court of Appeals cited *Hilliard* for the proposition that the claimant must prove the existence and extent of his disability. *See id.* at 765, 425 S.E.2d at 457. It then went on to describe four methods by which a claimant could meet that burden:

The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his

> part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Id.* (citations omitted).

Subsequently, the Court of Appeals has not applied *Russell* consistently. In one line of cases, the Court of Appeals has held that satisfying one of the *Russell* prongs satisfies two of the *Hilliard* elements, but not necessarily the causation element. *See, e.g., Helfrich v. Coca-Cola Bottling Co. Consol.*, ___, N.C. App. ___, ___, 741 S.E.2d 408, 413 (2013) ("A plaintiff may satisfy the first two prongs of the *Hilliard* test through [proving one of the *Russell* prongs.]"); *Heatherly v. Hollingsworth Co.*, 211 N.C. App. 282, 292, 712 S.E.2d 345, 352-53 ("A plaintiff may establish the first two elements through any one of four methods of proof [from *Russell.*]"), *disc. rev. denied*, ___, N.C. ___, 717 S.E.2d 367 (2011); *Graham v. Masonry Reinforcing Corp. of Am.*, 188 N.C. App. 755, 759, 656 S.E.2d 676, 679 (2008) ("This Court has stated a claimant may prove the first two prongs of *Hilliard* through [proving one of the *Russell* prongs.]"). In a second line of cases, however, the Court of Appeals has held that satisfying one of the *Russell* prongs proves all three *Hilliard* elements. *See, e.g., Campos-Brizuela v. Rocha Masonry, L.L.C.*, 216 N.C. App. 208, 223, 716 S.E.2d 427, 438 (2011) ("[W]e now hold that proof of disability under any one of the four prongs of the *Russell* test is sufficient to permit

-11-

an award of disability benefits."), *appeal dismissed and disc. rev. denied*, 366 N.C. 398, 732 S.E.2d 579 (2012); *Nobles v. Coastal Power & Elec., Inc.*, 207 N.C. App. 683, 692, 701 S.E.2d 316, 323 (2010) ("The employee must prove that he is unable to earn the same wages that he had earned before his injury, either in the same or other employment, and that the diminished earning capacity is a result of the compensable injury, a burden which he may meet in one of four ways [as stated in *Russell*]." (citing *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683)); *Barrett v. All Payment Servs., Inc.*, 201 N.C. App. 522, 524-25, 686 S.E.2d 920, 923 (2009) ("An employee may satisfy his burden under *Hilliard* in one of four ways . . . ."), *disc. rev. denied*, 363 N.C. 853, 693 S.E.2d 915 (2010); *Boylan v. Verizon Wireless*, 201 N.C. App. 81, 91, 685 S.E.2d 155, 161 (2009) ("In workers' compensation cases, a claimant ordinarily has the burden of proving both the existence of his disability and its degree. The employee may meet this burden in one of four ways [as described in *Russell*]." (citation and internal quotation marks omitted)), *disc. rev. denied*, 363 N.C. 853, 693 S.E.2d 918 (2010). Given these divergent lines of cases, there was support for both the majority and dissenting opinions here.

*Hilliard* was grounded explicitly in the statutory definition of disability in section 97-2; *Russell* expanded upon, and perhaps diverged from, that grounding. We reaffirm that a claimant seeking to establish that he is legally disabled must prove all three statutory elements as explained in *Hilliard*. He may prove the first two elements through any of the four methods articulated in *Russell*, but these

methods are neither statutory nor exhaustive. In addition, a claimant must also satisfy the third element, as articulated in *Hilliard*, by proving that his inability to obtain equally well-paying work is because of his work-related injury. This conclusion accords with the statutory definition of disability as the "incapacity *because of injury* to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C.G.S. § 97-2 (emphasis added). Our determination here also squares with the long line of precedent from this Court holding that the claimant must prove causation. *See, e.g.*, *Clark*, 360 N.C. at 43-44, 619 S.E.2d at 492-93; *Saums v. Raleigh Cmty. Hosp.*, 346 N.C. 760, 763, 487 S.E.2d, 746, 749 (1997); *Hendrix*, 317 N.C. at 185, 345 S.E.2d at 378.[1]

We now turn to the statutory "causation" element, as described in *Hilliard*. As we noted earlier, this Court has frequently stated that the legal definition of disability refers not solely to physical infirmity, but also to earning capacity. *See, e.g.*, *Hendrix*, 317 N.C. at 186, 345 S.E.2d at 378-79; *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 434-35, 342 S.E.2d 798, 804 (1986) (" 'Under the Workmen's

---

[1] The only case from this Court holding to the contrary is *Demery v. Perdue Farms, Inc.* In that case, the Court of Appeals held that proving one of the *Russell* prongs sufficed to prove all three *Hilliard* elements. *See Demery*, 143 N.C. App. 259, 264-66 & n.1, 545 S.E.2d 485, 489-90 & n.1, *aff'd per curiam* 354 N.C. 355, 554 S.E.2d 337 (2001). *Demery*, however, is readily distinguishable from this case. There, the disputed and dispositive issue was whether the claimant had satisfied the first *Russell* method by producing competent evidence showing that she was incapable of work in any employment. *See id.* at 264-67, 545 S.E.2d at 489-91. Whether her inability to find equally well-paying work was caused by her work-related injury, versus some other factor or combination of factors, was simply not in dispute. Accordingly, the implication in *Demery* that satisfying *Russell* satisfies all three elements of *Hilliard* was dicta, and our holding today does not disturb the ultimate result in that case.

Compensation Act disability refers not to physical infirmity but to a diminished capacity to earn money.' " (quoting *Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 84 155 S.E.2d 755, 761 (1967) (citations omitted))). Because the focus is on earning capacity, broad economic conditions, as well as the circumstances of particular markets and occupations, are undoubtedly relevant to whether a claimant's inability to find equally lucrative work was because of a work-related injury. Whether in a boom or bust economy, a claimant's inability to find equally lucrative work is a function of both economic conditions and his specific limitations. Both factors necessarily determine whether a specific claimant is able to obtain employment that pays as well as his previous position; the Commission makes this determination based on the evidence in the individual case.

**Application Here**

We now turn to the case at hand. We review an order of the Full Commission only to determine "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000); *see also* N.C.G.S. § 97-86 (2013); *Clark*, 360 N.C. at 43, 619 S.E.2d at 492; *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). Because the Industrial Commission is the "sole judge of the credibility of the witnesses and the weight of the evidence[,] [w]e have repeatedly held that the Commission's findings of fact 'are conclusive on appeal when supported by

competent evidence, even though there be evidence that would support findings to the contrary.' " *Davis v. Harrah's Cherokee Casino*, 362 N.C. 133, 137, 655 S.E.2d 392, 394-95 (2008) (citations omitted) (quoting *Jones v. Myrtle Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965) (per curiam)). In addition, where findings of fact are not challenged and do not concern jurisdiction, they are binding on appeal. *See* N.C.G.S. § 97-86 ("The award of the Industrial Commission . . . shall be conclusive and binding as to all questions of fact . . . ."); *see also McLean v. Roadway Express, Inc.*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982) ("Except as to questions of jurisdiction, the rule is that the findings of fact made by the Commission are conclusive on appeal when supported by competent evidence."). "The Commission's conclusions of law are reviewed *de novo*." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citation omitted).

Plaintiff has challenged only Finding of Fact Number 24. Again, that finding states:

> 24. On 21 June 2010, VocMed conducted a job analysis for Plaintiff's pre-injury Estimator position. The analysis indicated that the job required lifting and carrying up to ten (10) pounds on an occasional basis.

Plaintiff contends that this finding was not supported by competent evidence because "[t]he undisputed evidence shows that Plaintiff's primary job with Defendant-Employer was Project Manager, not Estimator. Although he performed some Estimator duties, Plaintiff was hired as a Project Manager and remained in

that role until he was laid off." Nonetheless, even if plaintiff were correct about his primary duties, this contention does not undercut the finding of fact, which refers to a vocational analysis of estimator positions. Moreover, based on our review of the record submitted to the Full Commission, we hold that this finding was supported by competent evidence. Because plaintiff has challenged only this specific finding, all the Commission's findings are binding on appeal. *See McLean*, 307 N.C. at 102, 296 S.E.2d at 458.

We also hold that these findings support the legal conclusion that plaintiff has not met his burden of showing that he is entitled to disability compensation. The findings of fact quoted above establish, among other things, that any limitations because of a superior labral tear were likely not caused by plaintiff's work-related injury. The Commission properly concluded, based on the evidence presented, that plaintiff has not proved that his inability to find equally lucrative work is *because* of his work-related injury. *See* N.C.G.S. § 97-2. Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.