An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-700

NORTH CAROLINA COURT OF APPEALS

Filed: 31 December 2014

ALAN WELLS,
    Employee,
    Plaintiff,

v.

CHARLOTTE MECKLENBURG HOSPITAL
AUTHORITY,
    Employer,

SELF-INSURED,
    Defendant.

North Carolina
Industrial Commission
I.C. Nos. X88380 & Y05621

Appeal by defendant from Opinion and Award entered 17 February 2014 by the North Carolina Industrial Commission. Heard in the Court of Appeals 4 November 2014.

    *The Sumwalt Law Firm, by Vernon Sumwalt, for plaintiff-appellee.*

    *Hedrick Gardner Kincheloe & Garofalo, LLP, by Thomas W. Page and M. Duane Jones, for defendant-appellant.*

    STROUD, Judge.

    Charlotte Mecklenburg Hospital Authority ("defendant") appeals from an opinion and award by the Full Commission.

Defendant contends that no competent evidence supports some of the Commission's findings of fact. Finding no error, we affirm.

## I. Factual Background

In December 2011, Alan Wells ("plaintiff") began his employment with defendant as an environmental services technician. On 16 February 2012, plaintiff sought treatment with Dr. Lisette Akers, a family practice physician. Although his "chief complaint" at this visit was a sore in his mouth, he also noted that he had experienced "pain in the plantar aspect" of his left foot for about three weeks, which he attributed to the fact that "he walks a lot." He also informed Dr. Akers that he had "never had any back pain" or "trauma to the back" but was having some lower back pain which he thought developed "because he's been walking with somewhat of a limp because of the heel and plantar pain." Dr. Akers performed a straight leg test, which was positive on the left and negative on the right. She diagnosed plaintiff with plantar fasciitis, noting that it "propagated to sciatica" which was "[s]econdary to his malalignment and limping."

On 20 February 2012, while throwing a trash bag into a dumpster at work, plaintiff felt a pop in his back that gave him a shock in his right leg. Plaintiff felt a "burning" pain and

was forced to lean against a wall for a few minutes to recuperate. Plaintiff finished his shift and then went home. Plaintiff returned to work the next day, but he experienced severe pain after trying to dispose of another trash bag. After plaintiff spoke with his supervisor, his supervisor directed him to an urgent care center, where he was examined by Dr. James Griggs. Dr. Griggs diagnosed him with acute lumbar radiculopathy and lumbar sprain, prescribed pain medication, and directed plaintiff not to work until he could be evaluated by Dr. Daniel Davis, an orthopedic spine specialist.

On 28 February 2012, plaintiff presented to Dr. Davis, and, on 14 March 2012, Dr. Davis ordered an MRI of plaintiff's lumbar spine. On 19 March 2012, plaintiff underwent the lumbar MRI. Dr. Davis observed from the MRI results that plaintiff was suffering from a herniated disc. On 16 May 2012, upon referral of Dr. Davis, plaintiff presented to Dr. Edward Hanley, an orthopedic surgeon. After discussing treatment options with Dr. Hanley, plaintiff elected to proceed with a microdisectomy. But plaintiff did not receive the surgery, because defendant did not authorize it. On 27 June 2012, at defendant's request, plaintiff presented to Dr. Craig Brigham for an independent medical examination, and, on 12 December 2012, plaintiff also

presented to Dr. John Welshofer, an expert in physical medicine and rehabilitation.

## II.  Procedural Background

On 14 June 2012, plaintiff filed Industrial Commission Form 18 giving notice of his Workers' Compensation claim.  On or about 5 July 2012, defendant filed Form 61 denying plaintiff's claim.  On or about 30 April 2013, Deputy Commissioner Keischa Lovelace ordered that defendant was entitled to terminate plaintiff's temporary total disability compensation benefits and was entitled to a credit for benefits paid to plaintiff after 27 June 2012.  Plaintiff appealed to the Full Commission.

On 17 February 2014, the Full Commission by Commissioner Bernadine Ballance reversed the deputy commissioner's opinion and awarded plaintiff, *inter alia*, $246.04 per week in temporary total disability benefits from 21 February 2012 through 29 January 2013.  Commissioner Linda Cheatham concurred in part and dissented in part.  On or about 21 February 2014, defendant received by certified mail the Full Commission's opinion and award.  On 24 March 2014, defendant timely filed a notice of appeal.

## III. Findings of Fact

A.   Standard of Review

We review an order of the Full Commission only to determine whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law. Because the Industrial Commission is the sole judge of the credibility of the witnesses and the weight of the evidence, we have repeatedly held that the Commission's findings of fact are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary. In addition, where findings of fact are not challenged and do not concern jurisdiction, they are binding on appeal. The Commission's conclusions of law are reviewed *de novo*.

*Medlin v. Weaver Cooke Const., LLC*, ___ N.C. ___, ___, 760 S.E.2d 732, 738 (2014) (citations and quotation marks omitted).

B.  Compensable Injury

Defendant contends that the Full Commission erred in concluding that plaintiff's injury is compensable, because no competent evidence supports the Commission's findings that Dr. Griggs and Dr. Hanley opined to a reasonable degree of medical certainty that the incident caused or aggravated plaintiff's back condition.  Relying primarily on *Edmonds v. Fresenius Med. Care*, defendant overall argues that the testimony of Dr. Griggs and Dr. Hanley was not competent because it was merely speculation.  165 N.C. App. 811, 600 S.E.2d 501 (2004) (Steelman, J., dissenting), *rev'd per curiam for reasons stated*

*in dissent*, 359 N.C. 313, 608 S.E.2d 755 (2005). The entirety of causation evidence must meet the "reasonable degree of medical certainty" standard necessary to establish a causal link between plaintiff's accident and plaintiff's injury. *Workman v. Rutherford Elec. Membership Corp.*, 170 N.C. App. 481, 494, 613 S.E.2d 243, 252 (2005). Although medical certainty is not required, an expert's speculation is insufficient to establish causation. *Id.*, 613 S.E.2d at 252. "The opinion of a physician is not rendered incompetent merely because it is based wholly or in part on statements made to him by the patient in the course of treatment or examination." *Hutchens v. Lee*, ___ N.C. App. ___, ___, 729 S.E.2d 111, 114, *disc rev. denied*, 366 N.C. 393, 732 S.E.2d 576 (2012).

Defendant first challenges Finding of Fact 23, which addressed Dr. Griggs' opinion:

> Dr. Griggs opined to a reasonable degree of medical probability based upon the history provided by Plaintiff and upon his examination of Plaintiff, that Plaintiff's back condition
> is causally related to his February 20, 2012 incident. This opinion did not change upon learning of Plaintiff's visit to Dr. Akers on February 16, 2012 because, "this was an acute injury that Dr. Griggs was seeing him for."

(Brackets omitted.)

Referring to plaintiff's visit with Dr. Akers, defendant argues that "Dr. Griggs' testimony as a whole shows he is not sure at all of the cause of Plaintiff's symptoms and his testimony of causation is merely a guess[, because he] was unaware of Plaintiff treating for back pain four days prior to his work injury." Although defendant notes that his opinion did not change after being presented with this information, defendant concludes that "Dr. Griggs' testimony, when considered in its totality, shows he has no clue as to whether Plaintiff's current complaints are being caused by his pre-existing degenerative condition or his work injury."

Although various excerpts from Dr. Griggs' testimony indicate that his opinion was based in part upon "trust in a patient," we disagree that his testimony as a whole discredits his ultimate opinion of causation, as found by the Commission. **[Griggs Dep. 51]** "It is not the role of the appellate courts to sift through the evidence and find facts that are different from those actually found by the Commission." *Edmonds*, 165 N.C. App. at 817, 600 S.E.2d at 506 (Steelman, J., dissenting). In his deposition testimony, Dr. Griggs opined to a reasonable degree of medical certainty that the incident caused or aggravated plaintiff's back condition. Dr. Griggs did not change his

opinion after considering Dr. Akers' observation of plaintiff's sciatic pain four days before the incident, because, according to Dr. Griggs, plaintiff's injury after the incident was "acute." His deposition testimony supports Finding of Fact 23.

Defendant claims that Dr. Hanley gave his opinion "without a full and accurate medical history" and that "once he was made aware of the back pain and radicular leg pain complaints just days before the work injury, Dr. Hanley's causation opinion changed completely[.]" Finding of Fact 24 addressed Dr. Hanley's opinion as to causation:

> Dr. Hanley opined within a reasonable degree of medical certainty that, "the described incident of February 2012 caused a ruptured disc aggravating pre-existing degenerative disc disease, causing acute back pain and leg pain." Dr. Hanley further opined, "that the described incident of February 2012 aggravated a pre-existing degenerative disc condition in [plaintiff], causing his pain." When asked whether Dr. Akers' diagnosis of sciatica on February 16, 2012 was inconsistent with the history [that] Plaintiff [had] conveyed to him, Dr. Hanley stated, "maybe" but pointed out that Plaintiff's pain on February 16, 2012 was related to his left lower extremity. Dr. Hanley testified that, while back pain can move from side to side, "radicular pain doesn't switch sides."

(Brackets omitted.)

In his deposition, Dr. Hanley also opined to a reasonable

degree of medical certainty that the incident caused or aggravated plaintiff's back condition. But defendant points out that, on cross-examination, Dr. Hanley responded in the negative when asked whether he could opine to a reasonable degree of medical certainty that the incident caused plaintiff's injury, upon being informed of Dr. Akers' observation of plaintiff's sciatic pain four days before the incident. But, on re-direct examination, plaintiff's counsel rehabilitated Dr. Hanley's opinion:

> Plaintiff's counsel: Okay. [Dr. Akers' note] also mentions no swelling of the spine. When [Dr. Akers] does the examination, she finds no swelling, no tenderness, no numbness, no tingling; in the hips, no swelling, no tenderness in the hips. Is that consistent with someone who has a herniated disc?
>
> Dr. Hanley: No.
>
> . . . .
>
> Plaintiff's counsel: . . . [I]f [plaintiff] had back pain or had sciatic [(sic)], and he performed this activity of throwing trash into the bin, could that [have] aggravated, then, or caused the herniated disc?
>
> Dr. Hanley: Yes.
>
> Plaintiff's counsel: Can you give us a medical basis for that?
>
> Dr. Hanley: Well, if you have a weak disc related to wear and tear, aging, and you

> bend and twist, torque your spine, you can rip the outer part of the disc, causing a piece of disc to push out and pinch the nerve passing by.

In addition, as found by the Full Commission, Dr. Hanley noted the fact that plaintiff's complaint prior to the incident arose from his left side, not his right. Ultimately, Dr. Hanley's testimony confirmed his opinion, to a reasonable degree of medical certainty, that the incident caused or aggravated plaintiff's herniated disc.

Defendant has challenged on appeal only Findings of Fact 23 and 24, which we have found are supported by competent evidence. Defendant also discusses in its brief the opinion testimony of Dr. Welshofer, which is noted in Finding of Fact 25, although it did not challenge this finding on appeal:

> Dr. Welshofer opined to a reasonable degree of medical certainty that the February 20, 2012 compensable work-related accident caused, or at the very least, aggravated Plaintiff's current back condition. Specifically, Dr. Welshofer opined:

>> I think this gentleman probably had a ruptured disc at L4-5 that led to the rather significant right sciatica documented by his fast assessment the day after his injury. So even if he had underlying spondylosis or

> degeneration, I don't think that was materially exacerbated by his injury. I think there was a disc protrusion. So it's kind of immaterial because I don't think he can have that type of MRI finding and not have symptoms that he would have reported to someone if that was a pre-existing condition.

> While Dr. Welshofer testified that he was not aware of Plaintiff's February 16, 2012 visit to Dr. Akers, he did not reverse his causation opinion upon learning of the visit and noted that Plaintiff's sciatic complaints to Dr. Akers were on the opposite side.

Dr. Welshofer may have given a more thorough explanation than Dr. Griggs or Dr. Hanley of why he did not change his opinion upon learning of plaintiff's visit to Dr. Akers, but overall his opinion testimony was consistent with that of Dr. Griggs and Dr. Hanley. Thus, the Commission ultimately relied upon the independent opinions of three different doctors, all of which were supported by the evidence. Accordingly, we hold that competent evidence supports the Commission's findings that Dr. Griggs and Dr. Hanley opined to a reasonable degree of medical certainty that the incident caused or aggravated plaintiff's back condition and that their opinions were not based upon mere

speculation or conjecture.

C.    Disability

Defendant next contends that the Full Commission erred in concluding that defendant suffered from a disability, because no competent evidence supports the Commission's finding that plaintiff made a reasonable, but unsuccessful, effort to find suitable employment.

> [T]o support a conclusion of disability, the Commission must find:    (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Medlin*, ___ NC at ___, 760 S.E.2d at 736 (citing *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982)). A plaintiff may prove the first two *Hilliard* elements by satisfying any of the following four prongs:

> (1) The production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting

conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Id.* at ___, 760 S.E.2d at 736-37 (citing *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993)).

Here, in Finding of Fact 36, the Commission found that plaintiff had satisfied the second *Russell* prong:

> Despite his known restrictions, Plaintiff began a job search in July 2012 by submitting an application to a staffing agency. Between July 2012 and December 2012, when the evidentiary hearing was held, Plaintiff applied for twenty-seven positions as documented by his job search logs. Plaintiff sought employment in sales, customer service, maintenance and cleaning. Plaintiff also applied for jobs as a driver, packer, and in restaurants, convenience stores and retail clothing stores. He testified that he primarily did internet searches because he had difficulty with the physical requirements of going from place to place to search for work. Plaintiff has not had any job offers. The Full Commission finds based upon the preponderance of the evidence in view of the entire record that Plaintiff has made a reasonable effort to find suitable employment under the circumstances of this case, even though he applied for some positions that appeared to be outside of his work restrictions or his skill level.

Relying on *Salomon v. The Oaks of Carolina*, defendant contends

that no competent evidence supports this finding. 217 N.C. App. 146, 153, 718 S.E.2d 204, 209 (2011). *Salomon*, however, is distinguishable. There, the plaintiff briefly testified that she had looked at "a couple of places" but did not proffer any other evidence of her job search. *Id.* at 152 & n.2, 718 S.E.2d at 208-09 & n.2. In contrast, here, plaintiff proffered a job search log, copies of plaintiff's job applications, and emails from prospective employers confirming receipt of plaintiff's applications. Accordingly, we hold that competent evidence supports the Commission's finding that plaintiff made a reasonable, but unsuccessful, effort to find suitable employment.[1] *See Medlin*, ___ N.C. at ___, 760 S.E.2d at 738.

IV. Conclusion

Because competent evidence supports the challenged findings of fact, we affirm the Commission's opinion and award.

AFFIRMED.

Judges HUNTER and McCULLOUGH concur.

Report per Rule 30(e).

---

[1] Defendant also challenges the Commission's finding that it would have been futile for plaintiff to seek suitable employment from 27 April 2012 through 29 January 2013. But, because we hold that plaintiff has satisfied the second *Russell* prong, we need not address this issue of whether plaintiff has satisfied the third *Russell* prong. *See Medlin*, ___ N.C. at ___, 760 S.E.2d at 736-37.