An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-59

Filed 5 November 2025

North Carolina Industrial Commission, IC No. 19-023663

BRIAN K. HALL, Employee, Plaintiff,

v.

JONES LANG LASALLE, INC., Employer,
and HARTFORD UNDERWRITERS
INSURANCE COMPANY,
Carrier, Defendants.


Appeal by Defendant from opinion and award entered 8 August 2024 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 August 2025.

*Bowman Law, PLLC, by Joseph S. Bowman, for Plaintiff–Appellee.*

*Hedrick Gardner Kincheloe Garofalo, LLP, by M. Duane Jones and Matthew J. Ledwith, for Defendant–Appellant.*


MURRY, Judge.

Jones Lang LaSalle, Inc. (Defendant–Employer) and The Hartford Insurance Group, Inc. (collectively, "Defendants") appeal an opinion and award (collectively, "opinion") of disability compensation to Brian K. Hall (Plaintiff) rendered by the full N.C. Industrial Commission (Commission). For the reasons below, this Court affirms,

vacates, and remands the opinion—each in part—for further necessary factfinding.

## I.    Background

Plaintiff has worked as an operating engineer for Defendant–Employer, a facilities-management company, since 15 January 2018 by performing a job that "require[s] him to operate, maintain, troubleshoot, and repair facility equipment" onsite. This "heavy[-]duty job" ordinarily "require[s] him to lift over 100 pounds" with some regularity. But on 30 May 2019, Plaintiff sustained injuries to his neck and left shoulder when he caught a loose "air circulator fan" to keep it from falling to the ground. He would later testify to "fe[eling] a pull from his neck through his shoulder" "when he caught the fan," which Defendant–Employer documented in a "Form 19 *Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission*" (Form 19). After a series of medical evaluations, Dr. Kevin P. Speer determined on 23 March 2023 that Plaintiff had healed up to his "maximum medical improvement (MMI)" and assigned him a 25% "permanent partial impairment . . . rating to his left arm." Throughout multiple surgeries to repair his shoulder between those two years, though, Plaintiff would "return[ ] to work in his former job . . . , with modifications, [to] earn[ ] the same or greater wages."

After the parties cross-appealed the initial 31 October 2023 opinion by Deputy Commissioner Thomas H. Perlungher, the full Commission conducted an evidentiary hearing under the North Carolina Workers' Compensation Act (Act). *See generally*

N.C.G.S. ch. 97, art. 1 (2025). It ultimately released the award, finding in relevant part that:

18. Even with the modifications, there are certain aspects of the operating engineer position that Plaintiff remains physically unable to complete ([*e.g.*,] lifting, overhead work).
19. Plaintiff very much liked working for Defendant–Employer and returned to work in hopes of finding a position with Defendant–Employer within his permanent restrictions.
25. Plaintiff would need retraining[ ] and vocational assistance[ ] to find a job within his permanent restrictions.
27. Plaintiff's job as operating engineer was modified to accommodate [these] permanent restrictions.
31. Dr. Rosenblum opined that Plaintiff attained MMI and he did not anticipate any meaningful improvement in Plaintiff's permanent, functional limitations and work restrictions.
36. Dr. [David B.] Musante agreed that Plaintiff's neck pain was aggravated or accelerated by the accident.

(Ellipses omitted.) "Based on the preponderance of evidence" from these initial findings, the Commission found that "Plaintiff's permanent work restrictions resulting from his left shoulder injury rendered him incapable of performing [his] full [professional] duties," that "the physical demands of th[is] position exceed[ed] Plaintiff's permanent work restrictions," and that Defendants "failed to establish that the position—as modified—is available in the competitive job market." (Ellipses omitted.)

Recognizing Plaintiff's "admittedly compensable injury," the Commission then concluded in relevant part that:

7. [T]he operating[-]engineer position is not suitable employment.

8. Defendants failed to show that [Plaintiff's] operating engineer job, as modified by providing a helper, is available in the competitive job market. Accordingly, Plaintiff is entitled to stop working the unsuitable job and begin receiving temporary total disability compensation while he conducts a reasonable job search for suitable employment within his restrictions.

(Ellipses omitted.) The opinion also awarded Plaintiff in relevant part "temporary total disability compensation at the rate of $773.42 per week from the date Plaintiff ceases working for Defendant–Employer . . . until [he] returns to suitable employment." Defendants timely appealed this opinion.

## II.    Jurisdiction

This Court has jurisdiction to hear Defendants' appeal of the opinion because it is a "final order or decision of . . . the North Carolina Industrial Commission" unrelated to "a general rate case." N.C.G.S. § 7A-29(a)–(b) (2025).

## III.    Analysis

On appeal, Defendants argue that the Commission did not make sufficient findings of fact to support the opinion's conclusion of law that Plaintiff was entitled to disability compensation. In the alternative, they argue that the Commission erred by placing on them the burden of disproving Plaintiff's disability. Because the "Commission is the sole judge of . . . [evidence] credibility," *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595 (1982), we consider only "whether competent evidence supports . . . [it]s findings of fact and whether th[os]e findings support . . . [it]s conclusions of law." *Carr v. Dep't of Health & Hum. Servs.*, 218 N.C. App. 151, 154 (2012) (quotation

omitted). For the reasons below, this Court affirms, vacates, and remands the opinion in part for further factfinding and thus declines to address Defendants' second argument.

Under the Act, a defendant employer must pay a plaintiff employee partially disabled on the job a certain amount of "weekly compensation" to be determined by either the full Commission or one of its constituent Commissioners. N.C.G.S. § 97-30 (2025). The Act defines "disability" as an "incapacity because of injury to earn the wages" that a plaintiff "receiv[ed] at the time of injury in the same *or any other employment*." *Id.* § 97-2(9) (emphasis added). That plaintiff bears the initial burden of proving to the Commission that (1) he could not "earn[ ] the same wages he had earned before his injury in the *same* employment," (2) he could not "earn[ ] th[os]e same wages . . . in *any other* employment," and (3) his injury caused the "incapacity to earn" in each case. *Hilliard*, 305 N.C. at 595 (emphases added) (articulating three § 97-2 elements).

To meet all three of the § 97-2 elements as outlined in *Hilliard*, the plaintiff must adduce "evidence that he is unsuited for employment due to characteristics peculiar to him" if he is still "physically able to work." *Id.* at 596. He can do so by producing evidence "in one of four ways" of:

(1) "Physical or mental" "incapability of work in any employment" "as a consequence of the . . . injury";[1]

---

[1] This is the only one of the four categories that specifically requires "*medical* evidence." *Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 672, 765 (1993) (emphasis added).

(2) "Capability of some work but" "an unsuccessful . . . effort to obtain employment" "after a reasonable effort on his part";

(3) "Futility" "of seeking other employment" "because of preexisting conditions, *e.g.*, age, inexperience, lack of education; or"

(4) "Other employment at a wage less than that earned prior to the injury."

*Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 672, 765 (1993) (citations and brackets omitted), *cited with approval in Medlin v. Weaver Cooke Constr., LLC*, 367 N.C. 414, 422 (2014). Because these categories "expand[ ] upon" "the statutory definition of disability in [§] 97-2," though, they "are neither statutory nor exhaustive." *Medlin*, 367 N.C. at 422. Only once the plaintiff has produced evidence in at least one of these four categories (or in some other possible manner) does the burden shift to the defendant "to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one" when considering "both [his] physical and vocational limitations." *Johnson v. S. Tire Sales & Serv.*, 358 N.C. 701, 708 (2004) (quotation omitted).

## A. *Hilliard* Elements

As noted above, Plaintiff bears the burden of proving his general wage-earning incapacity and that his injury caused it in fact. At the outset, the Commission sufficiently found that the fan collapse caused his injuries by noting Defendant–Employer's acknowledgement of Form 19. The findings document Plaintiff's regular medical treatment for his left-shoulder and neck injuries, then distinguish them both from any relation to "his cervical spine condition" "[b]ased on a preponderance of the evidence." The findings also show Plaintiff's repeated attempts to "return to work in

his former job as an operating engineer," even "with modifications." This documentation speaks to why Plaintiff periodically struggled to "find[ ] a position with Defendant–Employer within his permanent restrictions" but still leaves unanswered any causality between the injuries and his employment opportunities with third parties.

Defendants correctly point out that the Commission did not "make the required finding that Plaintiff was incapable of finding work in *any other employment*." (Citing *Medlin*, 367 N.C. at 420.) Despite this omission, it went on to conclude that Defendants did not meet their burden of showing that Plaintiff was not "capable of getting" any "suitable jobs" in light of his confirmed injuries. *Johnson*, 358 N.C. at 708. Even though the Commission recognized that any search would necessarily "accommodate Plaintiff's restrictions," it still erred by prematurely shifting the burden onto Defendants "to establish that the operating engineer position . . . is available in the competitive marketplace" without addressing the second *Hilliard* element. We "may remand . . . for additional findings" "when the[y] . . . are insufficient to determine the [parties'] rights." *Hilliard*, 305 N.C. at 595. Thus, this Court (1) affirms in part the opinion portions that document Plaintiff's unrestricted-employment incapability with Defendant–Employer as a result of his injuries, (2) vacates in part those portions that purport to address Defendants' burdens without first considering that unrestricted-employment incapability with third-party employers as a result of Plaintiff's injuries, and (3) now turns to the four *Russell*

categories that may fulfill these latter considerations on remand. *See Medlin*, 367 N.C. at 422 ("[A] claimant must . . . prov[e] that his inability to obtain equally well-paying work is because of his work-related injury.").

## B. *Russell* Categories

As noted above, *Russell* lists four non-inclusive methods of evidence production that may fulfill the first two *Hilliard* elements. The Commission sufficiently documented Plaintiff's evidence regarding the first but failed to do so for the second.[2] For example, Plaintiff showed that he was "capable of some work" for Defendant–Employer while still "unsuccessful in his effort to obtain" his pre-injury employment status. *Russell*, 108 N.C. App. at 765 (second category). All parties acknowledged that, even though "he very much liked working for Defendant–Employer" "with the modifications, there [we]re certain aspects of the operating[-]engineer position that Plaintiff remain[ed] physically unable to complete."

Plaintiff also seemed to adduce evidence of some degree of future employment "futil[ity] because of preexisting conditions"; however, the opinion itself is less than clear as to whether additional employment would be truly "futile." *Id.* (third category). He admitted that he "need[ed] retraining[ ] and vocational assistance[ ] to

---

2     We note that the Commission also found that Defendant–Employer "modified" "Plaintiff's job as operating engineer . . . to accommodate [his] permanent restrictions" and approved his "return[ ] to work in [t]his former job . . . , with modifications, earning the same or greater wages." These two findings negate the possibility of any evidence for the first and fourth categories, *i.e.*, that Plaintiff was respectively either "incapable of work in *any* employment" or only capable of "other employment at a wage *less than* that earned prior to the injury." *Id.* (emphases added).

find a job within his permanent restrictions." Dr. Musante further supported the possibility of a preexisting condition by "agree[ing] that Plaintiff's neck pain was aggravated or accelerated by the accident." These findings collectively evidence possible fulfillment of the second and third *Russell* categories as applied to the first *Hilliard* element. But absent more explicit identification with Plaintiff's efforts to find third-party employment, we cannot determine with any real certainty the extent of his compliance with that second *Hilliard* element (and its related injury causality). The Commission cannot shift the burden onto Defendants until it first finds the Plaintiff *also* meets this latter required element of "a compensable injury." *Johnson*, 358 N.C. at 708. Thus, when assessing this potential compliance on remand, this Court holds that the Commission must consider "both economic conditions and [Plaintiff's] specific limitations" as a result of his injury when considering his "inability to find equally lucrative work" with third-party employers. *Medlin*, 367 N.C. at 423.

## IV.   Conclusion

For the reasons documented above, this Court (1) affirms in part the opinion's findings and conclusions related to Plaintiff's unrestricted-employment incapability with Defendant–Employer as a result of his injuries; (2) vacates in part the opinion's findings and conclusions that purport to address Defendants' burdens without first considering that same incapability with third-party employers as a result of Plaintiff's injuries; and (3) remands in part to expressly consider whether Plaintiff

"was incapable after his injury of earning the same wages he had earned before his injury in any other employment." *Hilliard*, 305 N.C. at 595.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges ZACHARY and HAMPSON concur.

Report per Rule 30(e).