IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-421

Filed 18 April 2023

North Carolina Industrial Commission I.C. No. Y18418

MARTIN B. STURDIVANT, Employee, Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, Employer, SELF-INSURED (CCMSI, Third-Party Administrator), Defendant.

Appeal by Plaintiff from Decision and Order entered 28 February 2022 by Vice-Chair Myra L. Griffin for the North Carolina Industrial Commission. Heard in the Court of Appeals 15 November 2022.

*Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson, for the Plaintiff-Appellant.*

*Attorney General Joshua H. Stein, by Assistant Attorney General J.D. Prather, for the Defendant-Appellee.*

*Lennon Camak & Bertics, PLLC, by Michael W. Bertics, and The Harper Law Firm, PLLC, by Richard B. Harper and Joshua O. Harper, for Amicus Curae North Carolina Advocates for Justice*

*Brewer Defense Group, by Joy H. Brewer and Ginny P. Lanier, and Wilson & Ratledge, PLLC by Frances M. Clement and Kristine L. Prati, and Teague Campbell by Tracey L. Jones, Logan Shipman & Lindsay Underwood, for Amicus Curae North Carolina Association of Defense Attorneys, et al.*

DILLON, Judge.

This appeal involves an issue of first impression, namely the proper interpretation of a subsection added to our Workers' Compensation Act ("Act") in

2011, codified in Section 97-29(c), which provides for "extended" benefits beyond the 500-week cap in benefits for a temporary, total disability provided in Section 97-29(b).

Here, Plaintiff Martin B. Sturdivant seeks extended disability benefits for a back injury he suffered in 2011, after exhausting the maximum 500 weeks of disability benefits allowable Section 97-29(b). After considering the evidence offered at the hearing before a Deputy Commissioner, the Full Commission denied Plaintiff's claim for extended benefits. Plaintiff appeals from that denial. We affirm.

I. Background

In 2006, Plaintiff suffered a compensatory back injury while working for a private company.

In 2007, after Plaintiff left the private company, Plaintiff began working as a corrections officer for Defendant Department of Public Safety. On 31 August 2011, Plaintiff experienced back pain while transporting an inmate. Plaintiff immediately sought disability benefits under the Act for his back issues.

In October 2013, the parties entered a Consent Order, which was approved by the Full Commission, whereby Defendant accepted compensability and agreed to begin paying temporary, total disability benefits pursuant to Section 97-29(b).

In 2020, after receiving temporary, total disability benefits for over 425 weeks, Plaintiff filed a Form 33, seeking to qualify for "extended benefits" pursuant to Section 97-29(c) beyond the maximum 500 weeks of benefits allowed under Section

97-29(b). Defendant responded by filing a Form 33R, alleging that Plaintiff could not carry his burden to show he was entitled to extended benefits.

In May 2021, after a hearing on the matter, a Deputy Commissioner entered an order denying Plaintiff's claim requesting an extension of benefits. Plaintiff appealed to the Full Commission. In February 2022, the Full Commission affirmed the Deputy Commissioner's order, making its own findings and concluding Plaintiff failed to establish that he had suffered a total loss of wage-earning capacity. Plaintiff appeals this 2022 order of the Full Commission to our Court.

## II.    Analysis

Under the Act, an employee who suffers a compensable injury generally qualifies to receive "disability" benefits for the weeks he is not able to earn at least the same wage he was earning at the time he suffered his injury. As explained by our Supreme Court, in the context of workers' compensation, the term "disability" concerns "not the physical infirmity" suffered by the employee, but rather the employee's "diminished capacity to earn wages" resulting from the injury. *Saums v. Raleigh Community*, 346 N.C. 760, 764, 487 S.E.2d 746, 750 (1997). *See also Medlin v. Weaver*, 367 N.C. 414, 420, 760 S.E.2d 732, 736 (2014). Indeed, the term "disability" has long been defined under the Act as the "*incapacity* because of injury *to earn the wages* which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2011) (emphasis added).

A disability is "total" during a particular week where the employee has no wage-earning capacity that week. However, an employee is considered only "partially" disabled if he has the ability to earn some wage that week, though less than what he was earning. In the present case, the 2013 Consent Order, approved by the Full Commission, deemed Plaintiff's injury to be total.

A total disability is considered "temporary" if the disability is not caused by an injury described in Section 97-29(d), which provides that "[a]n injured employee may qualify for permanent total disability only if the employee has one of the [physical limitations enumerated in that subsection] resulting from the injury[.]" Here, neither party contends that Plaintiff's back injury constituted a "permanent" injury under the Act. Accordingly, Plaintiff's back injury resulted in a temporary, total disability.

In any event, until 1973, an employee suffering a temporary, total disability was entitled to receive benefits under Section 97-29 for a maximum of 400 weeks. *Whitley v. Columbia*, 318 N.C. 89, 98, 348 S.E.2d 336, 341 (1986). However, in 1973, the General Assembly removed this 400-week cap, such that an employee could receive benefits indefinitely while he remained totally disabled. *Id.*

But in 2011, our General Assembly reinstated a cap on eligibility for temporary, total disability benefits of 500 weeks "unless the employee qualifies for extended compensation under subsection (c)[.]" N.C. Gen. Stat. § 97-29(b). An employee qualifies for extended temporary, total disability benefits, beyond the 500-

week cap, if "pursuant to the provisions of G.S. 97-84, . . . the employee shall prove by a preponderance of the evidence that the employee has sustained a *total loss of wage-earning capacity*." N.C. Gen. Stat. § 97-29(c) (emphasis added).

Under the 2011 amendment, benefits for a *partial* disability have also been capped at 500 weeks. However, no provision was included to allow for extended benefits for a partial disability beyond 500 weeks. N.C. Gen. Stat. § 97-30.

Here, Plaintiff appeals the Full Commission's denial of his application for extended benefits under Section 97-29(c) for his 2011 back injury. He argues that the Commission misconstrued the meaning of Section 97-29(c).

A.      Meaning of "total loss of wage-earning capacity"

To qualify for total disability benefits for up to 500 weeks under Section 97-29(b), an employee must prove that he is has suffered a "total disability". To qualify for *extended* benefits under Section 97-29(c) for a total disability (beyond the 500 weeks allowed under Section 97-29(b)), an employee must prove that he has suffered the "total loss of wage-earning capacity". For the reasoning below, we conclude that an employee's burden of showing a "total loss of wage-earning capacity" for extended benefits under Section 97-29(c) is different from his burden of showing a "total disability" under Section 97-29(b) for the initial 500 weeks.

Our Supreme Court has described that "total disability" is present where an employee's "capacity to earn [has been] totally obliterated" by a compensable injury.

*Gupton v. Builders Transport*, 320 N.C. 38, 42, 357 S.E.2d 674, 678 (1987). Even if an employee has the capability to perform *some* type of work, he may still be deemed "totally disabled" *if* he shows that he cannot find a job compatible with his limited capability after reasonable efforts or that it would be futile for him to try. Specifically, our Supreme Court has held that an employee can meet his burden of showing a total disability "through any of the four methods articulated in [our Court's decision in] *Russell*, which includes situations where an employee has the ability to perform some work, but is otherwise unhirable. *Medlin*, 367 N.C. at 422, 760 S.E.2d at 737. The *Russell* opinion – *Russell v. Lowes*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) –is discussed below in Section C of this opinion.

Here, the Commission concluded that an employee who has some work capabilities but cannot find a compatible job, though "totally disabled", has not suffered a "total loss of wage-earning capacity" to qualify for extended benefits under Section 97-29(c). Defendant agrees with the Commission's conclusion.

Plaintiff, though, contends the Commission erred. We agree. We are persuaded by Supreme Court opinions from *both prior to and after* the 2011 amendment where that Court uses the phrase "loss of wage-earning capacity" synonymously with "disability". *See, e.g., Wilkes v. City of Greenville*, 369 N.C. 730, 745, 799 S.E.2d 838, 849 (2017); *Harrell v. Harriet*, 314 N.C. 566, 575, 336 S.E.2d 47,

53 (1985). It reasonably follows that "*total* disability" (under Section 97-29(b)) and "*total* loss of wage-earning capacity" (under Section 97-29(c)) are synonymous.

More importantly, our General Assembly expressly defines "disability" in the Act as the "incapacity . . . to earn wages[.]" N.C. Gen. Stat. § 97-2(9). Applying the plain language of this statutory definition, it reasonably follows that "*total* disability" means "*total* incapacity to earn wages." The phrase "total incapacity to earn wages" conveys the same idea as the phrase "total loss of wage-earning capacity".

B.      Plaintiff's burden of proof for extended benefits under Section 97-29(c)

An employee seeking temporary, total disability benefits has the burden to show his disability *for each week* he seeks benefits. *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 493 (2005) (holding that the burden is on the employee to prove "the existence of [his] disability and its extent"). However, in 1971, our Supreme Court held that an initial award by the Commission of weekly disability benefits (whether partial or total) creates a presumption in favor of the employee. This presumption, known as the *Watkins* presumption, states that the disability continues each week until "the employee returns to work at wages equal to those he was receiving at the time his injury occurred." *Watkins v. Central Motor Lines*, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971). That is, until an employee who has been awarded total disability benefits under Section 97-29(b) returns to work, it is

*presumed* that (1) he has no wage-earning capacity *and* (2) his compensable injury continues to be the cause of his incapacity to earn a wage.

Of course, the *Watkins* presumption is just that, a rebuttable presumption. *Stone v. G&G Builders* , 346 N.C. 154, 157, 484 S.E.2d 365, 367 (1997). Therefore, an employee who has been awarded benefits for a total disability continues to qualify for benefits in subsequent weeks without needing to offer evidence of his continued disability "unless and until the employer . . . comes forward with evidence to show, not only suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations." *Saums*, 346 N.C. at 763, 487 S.E.2d at 749.

Our Supreme Court has never determined whether this *Watkins* presumption, available for continued benefits under Section 97-29(b), applies beyond the 500-week cap. Based on the language of Section 97-29, we conclude an employee who seeks *extended* benefits under Section 97-29(c) is not entitled to a presumption that he has suffered a total loss of wage-earning capacity merely because it was previously determined that he had suffered a disability under Section 97-29(b). Section 97-29(c) plainly states that to qualify for extended benefits, the employee "shall prove" that he "has sustained a total loss of wage-earning capacity." There is no indication that

our General Assembly intended an injured employee to rely on a prior determination of total disability beyond the 500-week cap.[1]

### C. Plaintiff has failed to meet his burden

As explained above, Plaintiff is correct that the Commission erred by concluding that his burden to show a "total loss of wage-earning capacity" under Section 97-29(c) for extended benefits is higher than was his burden to show "total disability" to qualify for the initial 500 weeks of benefits. However, in other parts of its order, the Commission seems to apply the correct analysis and does make findings of fact which support its ultimate decision based on our interpretation of Section 97-29(c). We, therefore, need not remand to correct any erroneous conclusions of law, as the "Commission's conclusions of law are reviewed *de novo*." *McRae v. Toastmaster*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

In *Russell*, our Court held that an employee meets his burden of showing a disability, that is a loss of wage-earning capacity, in one of four ways:

(1) by showing he is incapable of performing any work;
(2) by showing that he is capable of work *but that* "after a reasonable effort on his part, been unsuccessful" in finding employment;
(3) by showing that he is capable of work *but that* "it would be futile" to seek other employment "because of preexisting conditions; i.e., age, inexperience, lack of education";

---

[1] This is not to say that an employee is not entitled to a presumption for *continued* extended benefits once he shows that he qualifies for *extended* benefits. Indeed, Section 97-29(c) suggests that once an employee meets his initial burden of showing he is entitled to extended benefits, the burden then shifts to the employer to prove "by a preponderance of the evidence that the employee no longer has a total loss of wage-earning capacity" for the extended benefits to cease.

> (4) by showing he has obtained employment, but at a lower wage than he was earning before the accident.

*Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457. Only the first three ways are relevant here, as the fourth concerns *partial* loss wage-earning capacity.

In its order, the Commission made findings as to the three ways Plaintiff could have proved a total loss of wage-earning capacity. The Commission weighed the evidence and found that (1) "Plaintiff has some transferable skills from his several decades of prior employment in various fields"; (2) there were jobs in Plaintiff's home county that were compatible with his skill; and (3) "[c]onsidering Plaintiff's work history [and] his educational level," he "would be able to obtain some employment, at a minimum, part-time work in a sedentary position." The Commission determined Plaintiff had not met his burden, in part, based on a its determination that Plaintiff failed to show a loss of wage-earning capacity in the ways described in *Russell*:

> Here, the Full Commission concludes that Plaintiff has failed to meet his burden to establish by a preponderance of the evidence that he has experienced a total loss of wage-earning capacity. . . . [C]onsidering all the circumstances related to Plaintiff's wage-earning capacity, the Full Commission notes that Plaintiff is not medically restricted from all work, Plaintiff is a high school graduate with some community college experience; Plaintiff has some transferable skills; and there are sedentary positions within Plaintiff's self-reported restrictions in nearby counties.
>
> With respect to Plaintiff's assertion that he is unable to work in any capacity due to his chronic pain related to his compensable injury, [expert witnesses] all testified that at

least some of their patients with conditions similar to Plaintiff's condition have been able to return to work; and Plaintiff's most severe pain occurs only approximately once per week, tending to show that he retains some wage-earning capacity on days where his pain is less severe. Despite Plaintiff's work restrictions and reports of chronic pain, in light of he remaining factors noted previously, the Full Commission concludes that Plaintiff has the capacity to earn wages.

As to the first *Russell* way of proof, the Commission assigned greater weight to Defendant's evidence and found that Plaintiff could perform some work. As to the second *Russell* way of proof, Plaintiff does not point us to any evidence that he made any effort to find a job. Further, the Commission found that it appeared at least two employers who indicated that they had employment for which it "appeared [they could make] accommodat[ion]" for Plaintiff's specific limitations. The Commission considered the third *Russell* way of proof by considering Plaintiff's specific situation, *e.g.*, his experience ("transferable skills"), his education ("high school with some community college experience"), his physically limitations ("chronic back pain"), etc., and essentially found that it would not be futile for Plaintiff to seek work.

The Commission's findings are supported by evidence in the record from the hearing before the Deputy Commissioner, including the testimonies of Defendant's medical and vocational experts.

Plaintiff, though, argues the Commission erred in relying on the testimony of Defendant's vocational expert by failing to determine whether the testimony was

admissibility under Rule 702 of our Rules of Evidence. However, as found by the Commission in its order, Plaintiff did not object to the testimony at that hearing before the Deputy Commissioner. Accordingly, even if the testimony of Defendant's vocational expert was incompetent under our Rules of Evidence, we conclude it would not have been reversible error for the Full Commissioner, as the fact-finder, to consider said testimony and to assign whatever weight to it the Commission deemed appropriate. Indeed, our Supreme Court has held that any objections to evidence in a worker's compensation case must be made when first offered in the hearing before the Deputy Commissioner. *Maley v. Thomasville*, 214 N.C. 589, 593, 200 S.E.2d 438, 441 (1939) (wherein our Supreme Court stated that "a subsequent formal objection to the evidence filed before the Full Commission, accompanied by a motion to strike, comes too late.") And "where testimony sufficient to establish a fact at issue has been received in evidence without objection, a nonsuit cannot be sustained even if the only evidence tending to establish the disputed fact is incompetent." *Reeves v. Hill*, 272 N.C. 352, 362, 158 S.E.2d 529, 537 (1968). Of course, the Commission was not required to consider the testimony of Defendant's experts offered before the Deputy Commissioner; however, it was not error for the Commission to do so, as Plaintiff failed to object to it when initially offered.

Plaintiff further argues that the Commission erred in "relying on evidence that Plaintiff is not medically restricted from all work," contending that the Commission's

order "implies that Plaintiff would need to be medically restricted from all work in order to meet the standard of 'total loss of wage-earning capacity'." As stated above, Plaintiff could still qualify for extended benefits, even if he was not medically restricted from all work, *if* there were no available jobs for him. However, the Commission did not rely solely on this finding in making its decision. The Commission also found that there were suitable jobs in the market based on the testimony of Defendant's vocational expert. And Plaintiff otherwise failed to meet his burden to offer evidence that he made reasonable efforts to find a job suitable to the capabilities the Commission found him to have.

In sum, based on the findings of the Commission supported by the evidence in the record, we conclude that Plaintiff failed to meet his burden of showing that he qualifies for extended benefits under Section 97-29(c).

## III.    Conclusion

Section 97-29(c) states that an employee receiving total disability benefits under Section 97-29(b) may qualify for "extended benefits" if he proves he "has sustained a total loss of wage-earning capacity." N.C. Gen. Stat. § 97-29(c). We agree with Plaintiff that his burden of showing a "total loss of wage-earning capacity" under Section 97-29(c) is the same as his burden of showing a "total disability" to receive benefits under Section 97-29(b). For instance, one who can perform some work may still qualify for extended benefits if no one would hire him.

However, we agree with Defendant that Plaintiff, when seeking extended benefits under Section 97-29(c), is not entitled to a presumption that he continues to suffer from a total loss of wage-earning capacity based on a prior determination that he was totally disabled under Section 97-29(b).

Accordingly, we conclude the Commission's findings support its denial of extended benefits based on our conclusions regarding the proper interpretation of Section 97-29(c). Although Plaintiff offered evidence that he cannot work, the Commissioner did not err in finding that Plaintiff has the ability to perform some work based on conflicting evidence offered by Defendant. Further, Plaintiff did not meet his burden of presenting evidence that he had searched for jobs or that it would have been futile for him to do so.

Ultimately, Plaintiff had the burden of showing "total loss of wage-earning capacity", and the Commission did not err in finding that Plaintiff failed to meet his burden of showing he qualifies for extended benefits under Section 97-29(c). Therefore, we affirm the Commission's order denying Plaintiff extended benefits.

AFFIRMED.

Chief Judge STROUD concurs in result only.

Judge HAMPSON concurs in part and dissents in part by separate opinion.

HAMPSON, Judge, concurring in part and dissenting in part.

I am in full agreement with Part II, Subpart A of the Opinion of the Court that the Full Commission erred in the standard it applied to determine whether Plaintiff had suffered a total loss of wage-earning capacity for purposes of determining whether Plaintiff was entitled to receive extended temporary total disability benefits under N.C. Gen. Stat. § 97-29(c). I also agree with Part II, Subpart B of the Opinion of the Court that in meeting his burden of proof to qualify for extended benefits, Plaintiff is not entitled to the *Watkins* presumption of continuing temporary total disability.

Rather, my dissenting view is limited to Part II, Subpart C of the Opinion of the Court and more so on the appropriate mandate of this Court. In my view, the appropriate disposition is to vacate the Opinion and Award of the Full Commission and remand this matter to the Full Commission to allow the Commission—as the sole judge of the credibility of the evidence—to undertake any further proceedings it deems necessary and to make findings of fact and conclusions of law applying the correct standard based on the evidence before it. This is so because while I agree there are findings of fact which generally address Plaintiff's overall reported sedentary limitations and the fact there may potentially be positions which may or "appear" to accommodate sedentary restrictions, the Commission's Findings do not address the more individualized analysis necessary to determine whether Plaintiff

had the capacity to be hired in any of these potential positions in light of his limitations.

Here, the Commission determined Plaintiff has some ability to do some work to earn some wage. But the analysis does not end there. Indeed, it is axiomatic " 'if other pre-existing conditions such as an employee's age, education and work experience are such that an injury causes him a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the incapacity which he or she suffers, and not for the degree of disability which would be suffered by someone with superior education or work experience or who is younger or in better health[.]' " *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 596, 290 S.E.2d 682, 684 (1982) (quoting *Little v. Food Service*, 295 N.C. 527, 532, 246 S.E.2d 743, 746 (1978)). "A plaintiff must adduce, in cases where he is physically able to work, evidence that he is unsuited for employment due to characteristics peculiar to him." *Id.* (citation omitted). For example:

> In order to prove disability, the employee need not prove he unsuccessfully sought employment if the employee proves he is unable to obtain employment. An unsuccessful attempt to obtain employment is, certainly, evidence of disability. Where, however, an employee's effort to obtain employment would be futile because of age, inexperience, lack of education or other preexisting factors, the employee should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist.

*Peoples v. Cone Mills Corp.*, 316 N.C. 426, 444, 342 S.E.2d 798, 809 (1986).

For instance, here, the Commission found Plaintiff could potentially "be able to find some employment, at a minimum, part-time work in a sedentary position." There is, however, no finding that such jobs are available or that Plaintiff would be otherwise qualified or hireable in those positions. Indeed, Defendant's vocational expert did not even review part-time jobs—merely assuming they might be available—instead focusing on full-time sedentary jobs up to 50 miles away from Plaintiff's home and outside his home county of Anson, including specifically identifying only two possible full-time jobs in Mecklenburg and Union Counties that "appear" to be able to accommodate the types of restrictions reported by Plaintiff. As such, on the existing findings of fact, there is no indication of any part-time sedentary work available to Plaintiff.

Moreover, while it is true there is evidence that Plaintiff may have the ability to work in some employment, there is also evidence Plaintiff may nevertheless be unable to obtain such employment. *Hilliard*, 305 N.C. at 596, 290 S.E.2d at 684. For example, the Commission did not grapple with the question of whether Plaintiff would be able to travel to or work in jobs up to 50 miles away considering Plaintiff's alleged limitation on being able to sit or stand for no more than 10 minutes at a time. Nor did the Commission take on the individual question of whether Plaintiff's chronic back pain flare-ups would impact his ability to perform the proffered jobs such that he could meet job requirements and availability. For that matter, the Commission made no consideration of the length of Plaintiff's absence from the workforce, or the

lack of any vocational rehabilitation provided by Defendant over the intervening years. Indeed, the Commission did not even make a definitive finding Plaintiff was, in fact, subject to sedentary restrictions. In short, there are still factual questions— and likely others not identified here—to be resolved by the Commission before determining whether Plaintiff is or is not entitled to extended temporary total disability benefits. This is so because the Commission was focused on the question of whether Plaintiff could perform some type of work—including theoretical part-time sedentary work on any given theoretical day—and not whether Plaintiff would, in fact, be suited to any of that employment based on factors peculiar to him.

Thus, in my view, the Commission did not make specific findings of fact as to "the crucial questions necessary to support a conclusion" as to whether Plaintiff remains totally disabled so as to qualify for extended benefits. *Id.* "This Court is therefore unable to determine whether adequate basis exists, either in fact or law," for the Commission's denial of extended benefits. *Id.* at 596-97, 290 S.E.2d at 684. Consequently, in my view, the proper result is to vacate the Opinion and Award of the Industrial Commission and remand this matter to the Full Commission for any further proceedings it deems necessary and a new Opinion and Award applying the proper legal standard and making supporting findings of fact. *Id.*